JUDGE'S COPY

DMB:KLM:slg:2000V00797

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

PAUL LEE,                          :
         Plaintiff                 :
                                   :
     v.                            :    Civil No.  1:CV-00-00486
                                   :    (Kane, J.)
UNITED STATES OF AMERICA, et al.   :
         Defendants                :

BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGEMENT

I. Statement of the Case

On March 15, 2000, Paul Lee, an inmate incarcerated at the Federal Correctional Institution Allenwood, White Deer, Pennsylvania, ("FCI Allenwood") filed a combined Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671 et seq., and Bivens complaint.[1]  Lee alleges that during his incarceration he was provided "improper bedding" that has caused a steady deterioration of his left hip as well as degenerative arthritis.  In his Bivens claim, Lee alleges deliberate indifference regarding medical treatment of his left hip.  As to Lee's FTCA claim, he alleges that the United States has negligently failed to provide him with medical care and treatment for his left hip injury.

Lee filed his complaint against the following defendants: the United States of America; Kathleen M.Hawk-Sawyer, Director, Federal

---

[1] Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

Bureau of Prisons; and the Federal Bureau of Prisons. On November 27, 2000, defendants' filed a motion for summary judgment. This brief is filed in support of that motion. Defendants seek summary judgment as to the <u>Bivens</u> claims because the material undisputed facts establish that they were not deliberately indifferent to Lee's medical care or provision of a mattress. As to the FTCA portion of the complaint the undisputed facts demonstrate that Lee was provided with appropriate medical treatment and care.[2]

## II. Statement of Facts

On July 30, 1991, Lee entered into the custody of Federal Bureau of Prisons. Lee was released from custody on July 15, 1992, via good conduct time release. (<u>See</u> R. 9, ¶ 3.)[3] On February 17, 1995, Lee entered into the custody of the Bureau of Prisons arriving at F.C.I. McKean, Pennsylvania on March 10, 1995. (R. 9, ¶4.) On March 30, 1995, Lee was transferred to F.C.I. Cumberland, Maryland. (R. 9, ¶5.) A review of Lee's medical records reveals that on September 18, 1995, Lee had an x-ray of his lower back taken which indicated that Lee had **mild diffuse degenerative arthritis** of the lumbar spine. (R. 9, ¶6.)

---

[2] We note that defendants also have filed a motion to dismiss improperly named parties and Lee's unexhausted FTCA claim of inadequate medical care. That motion has been separately briefed.

[3] "R." refers to Defendant's Record to Brief in Support of Defendant's Motion for Summary Judgment.

On February 5, 1996, Lee was transferred to F.C.I. Beckley, West Virginia, arriving there on February 20, 1996. (R. 9, ¶7.) Lee made the first complaint concerning his left hip on or about July 14, 1997. Lee was seen by medical staff and he was prescribed Tylenol. At that time, Lee indicated to staff that he had a history of osteoarthritis.[4] (R. 9-10, ¶8.)

On August 4, 1997, Lee was seen by medical staff in response to complaints that his left hip was "aching." Lee was prescribed Motrin and told to apply heat three times a day. An orthopedic consultation was ordered for an injection--which was to be canceled if Lee got better. At that time, medical staff suspected that Lee was suffering from bursitis.[5] (R. 10, ¶9.)

On September 15, 1997, Lee was seen by medical staff for lower back pain. It was noted that Lee had full range of motion, but his back was tender. Lee was prescribed Motrin and heat, and he was instructed to report to sick call if needed. (R. 10, ¶10.)

On October 14, 1997, Lee was seen by medical staff and again a diagnosis of bursitis was made. Lee was prescribed Motrin and was instructed to apply heat and to return to health services as needed. (R. 10, ¶11.)

---

[4] Osteoarthritis is a type of arthritis marked by progressive cartilage deterioration in the synovial joints and vertebrae. Taber's Cyclopedic Medical Dictionary, 1364 (18th ed. 1997).

[5] Bursitis is an inflammation of the padlike sac or cavity found in the connective tissue usually in the vicinity of joints. Taber's Cyclopedic Medical Dictionary, 280 (18th ed. 1997).

3

On December 9, 1997, Lee was examined by an orthopedic specialist pursuant to the consultation ordered on August 4, 1997. During this examination, the orthopedic specialist noted that Lee had Piriformis Syndrome.[6] The affected area was injected with Depo-Medrol[7] and Xylocaine.[8] Lee was also prescribed Indomethacin, which is an anti-inflammatory medication. (R. 10-11, ¶12.)

Over the next seven months Lee was examined by medical staff on February 13, May 14, and May 22, 1998, for various complaints **unrelated** to left hip pain. (R. 11, ¶¶13, 14, 15.) It was not until July 24, 1998, that Lee was examined by medical staff for umbilical hernia and complaints of left hip pain. Lee was prescribed Indomethacin and a referral for steroid injection was made. Medical staff noted that Lee did not require a lower bunk in his quarters. The record further indicates that Lee **failed** to appear for his scheduled orthopedic consultation with the orthopedic specialist. (R. 11, ¶16.)

On September 15, 1998, Lee was evaluated by medical staff and he requested another injection. An orthopedic consultation with

---

[6] Piriformis Syndrome is a condition marked by pain in the hip and buttock that radiates up into the lower back and down the leg. Taber's Cyclopedic Medical Dictionary, 1480 (18th ed. 1997).

[7] Depo-Medrol is an anti-inflammatory intramuscular injection. Physician's Desk Reference, 2412 (48th ed. 1994).

[8] Xylocaine is indicated for local or regional anesthesia. Physician's Desk Reference, 563 (48th ed. 1994).

4

the orthopedic specialist was again scheduled and Lee was prescribed Indomethacin. (R. 12, ¶ 17; R. 52.)

On October 26, 1998, Lee was transferred to the Federal Correctional Institution Allenwood ("FCI Allenwood"), White Deer, Pennsylvania arriving there on November 16, 1998. (R. 12, ¶18.) During this transfer period, Lee was evaluated by medical staff for "left hip arthritis" on November 2, 1999. Lee requested medication for pain and was prescribed Motrin. (R. 12, ¶19.)

On November 16, 1998, upon Lee's arrival at FCI Allenwood, a history of left hip bursitis was noted in Lee's medical record. (R. 12, ¶20.) Lee was next seen by medical staff six months later on April 19, 1999, for a complaint **unrelated** to hip pain. (R. 12, ¶21.)

On April 26, 1999, Lee reported for sick call, complaining of congestion, coughing, a hernia, and left side bursitis. It was again noted during this visit that Lee had a history of left hip bursitis. An examination of Lee's left hip revealed a decreased range of motion of all fields, positive point tenderness over the joint without erythema or signs of active inflammation. Lee was prescribed Motrin to be taken as needed for pain. Medical staff diagnosed Lee as suffering from left hip bursitis by history, which means that Lee has a history of bursitis but no present indication or complaints of bursitis. An x-ray of Lee's hip was ordered, and a consultation request was made for an orthopedic specialist to

5

evaluate his hip. (R. 12-13, ¶22.) On April 30, 1999, Lee was seen by medical staff for complaints unrelated to his left hip. (R. 13, ¶23.)

On June 2, 1999, an x-ray report revealed that Lee had severe degenerative changes of the left hip joint. (R. 13, ¶24.) On June 23, 1999, Lee **failed** to appear for a scheduled sick call appointment. (R. 13, ¶25.) On July 6, 1999, medical staff discussed the results of the x-ray with Lee. At this time, medical staff discussed degenerative joint disease and the various treatment options. Lee was also instructed that he would be seeing an orthopedic specialist. (R. 13-14, ¶26.)

On July 14, 1999, Lee was evaluated by an orthopedic specialist. The orthopedic specialist indicated to Lee that he could be a candidate for hip replacement in the future, but that at the present time he appeared to be too young for such a procedure. Lee was then offered a cane and a local injection. Lee **refused** both of these options. (R. 14, ¶27.)

Lee was examined by medical staff on August 13 and 18, September 2, November 29, and December 9, 1999, for a variety of complaints, none of which related to left hip pain. Lee made no further complaints to medical staff about his left hip pain until five months later on December 22, 1999. At this time, an orthopedic referral was submitted and x-rays were again ordered to be taken. (R. 14, ¶¶28, 29, 30, 31, 32.)

6

On January 6, 2000, a consultation request for an orthopedic specialist was written to evaluate Lee's degenerative joint disease of the left hip. (R. 15, ¶34.) On February 4, 2000, a review of the x-ray films revealed bilateral osteoarthritis. It was noted that the left side was greater than the right. (R. 15, ¶35.)

On April 12, 2000, Lee was seen by an orthopedic specialist who again recommended that Lee use a cane and take anti-inflammatory medication. Lee was somewhat resistant to using a cane, and the orthopedic specialist explained why the cane would be beneficial. The orthopedic specialist told Lee that when he was ready to discuss hip surgery it would be reasonable to have this discussion with him. (R. 15-16, ¶36.)

On May 8, 2000, Lee made a request for two copies of his orthopedic consultations, which were provided to him on June 26, 2000. (R. 16, ¶37.) On May 19, 2000, Lee's medications were refilled, in addition, Lee was prescribed Motrin with one refill. It was noted that Lee had a history of degenerative joint disease. (R. 16, ¶38.)

Since May 2000, Lee has been seen by medical staff on three occasions, July 11, August 22, and October 6, 2000. (R. 16, ¶¶40, 41, 42.) Over this six month period, Lee has made no complaints to medical staff of left hip pain. As of November 20, 2000, Lee has not requested to see the orthopedic specialist to discuss having a hip replacement. (R. 17, ¶43.)

7

Based upon Dr. Migliorino's review of Lee's medical records, there is no record that Lee ever complained that his hip condition was caused by inappropriate bedding. Rather, the record reveals that Lee is suffering from degenerative joint disease. (R. 17, ¶44.)

### III. Question Presented

1. Should defendants be granted summary judgment to Lee's deliberate indifference claim as there exists no genuine issues of material fact and/or due to qualified immunity?

2. Should defendants be granted summary judgment as Lee cannot establish a Federal Tort Claims Act claim?

Suggested answer in the affirmative.

### IV. Argument

**III. Summary Judgment May Be Granted in Favor of Defendants as There Are No Genuine Issues of Material Fact.**

**A. Summary Judgment Is Appropriate Because There are no Genuine Issues of Material Fact.**

Pursuant to Fed.R.Civ.P. 56, summary judgment is appropriately entered when the moving party demonstrates, by affidavit or otherwise, that there are no genuine issues of any material fact to be resolved. See Peterson v. Lehigh Valley District Counsel, 676 F.2d 81, 84 (3d Cir. 1982); Continental Insurance v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982).

Rule 56(c) "mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish existence

of an element essential to that party's case and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The Court also stated in <u>Celotex</u> that the party moving for summary judgment need not, as a matter of course, support its motion with affidavits. The Court reasoned that "the impact of these subsections [Fed.R.Civ.P. 56 (a)-(e)] is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may and should be granted <u>so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment</u>, as set forth in Rule 56(c) <u>is satisfied</u>." 477 U.S. at 323 (emphasis added).

**B. Lee Cannot Establish That the Prison Officials Were Deliberately Indifferent to His Serious Medical Needs.**

As with any other eighth amendment claim, mere negligence or dissatisfaction with medical care does not state a constitutional claim. <u>Estelle v. Gamble</u>, 429 U.S. 97, 105-106 (1976). "In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" <u>Id</u>. at 105-106. Rather, an eighth amendment claim exists only when there is deliberate indifference to a <u>serious</u> medical need. <u>Id</u>.; <u>West v. Keve</u>, 571 F.2d 158, 161 (3rd Cir. 1978).

To establish deliberate indifference, a prison official must both know of <u>and</u> disregard an excessive risk to inmate health or

9

safety. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994); <u>Wilson v. Seiter</u>, 501 U.S. 294, 299 (1991)("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, *supplying medical needs*, or restoring official control over a tumultuous cellblock.") "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837. "The question ... is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" <u>Id.</u>, at 843.

Mere disagreement as to the proper medical treatment does not support an eight amendment claim. <u>Monmouth County Correctional Inst. Inmates v. Lensario</u>, 834 F.2d 326, 346 (3rd Cir. 1987). Where an inmate is provided with medical care and the dispute is over the adequacy of that care, an eighth amendment claim does not exist. <u>Nottingham v. Peoria</u>, 709 F.Supp. 542, 547 (M.D.Pa. 1988).

In this case, it is clear from the defendant's declaration (R. 8-18.) and the detailed statement of facts, <u>see</u> text <u>supra</u> at 2-8, that Lee consistently received medical care consistent with community standards. Lee was seen by medical staff on at least twenty seven different occasions. On thirteen of these occasions,

10

Lee **failed** to make any complaint of left hip pain. Lee was evaluated by an orthopedic specialist on at least three occasions, with medical staff prescribing various courses of treatment, including the application of heat, anti-inflammatory medication, local injections, the use of a cane, and a possible hip replacement.

It is obvious that Lee was not denied medical care. Rather, Lee's lawsuit rests solely upon his dissatisfaction with the course of treatment he was provided. As such, the defendants' are entitled to summary judgment as to Lee's eighth amendment claim of deliberate indifference.[9]

C. **Lee Cannot Establish A Tort Claims Act Claim.**

Under the Federal Tort Claims Act, federal prisoners may seek redress for injuries resulting from the simple negligence of employees of the United States. United States v. Muniz, 374 U.S. 150, 153-154 (1963). It is well-settled that a federal district court considering a FTCA action must apply the law of the state in which the alleged tortious conduct occurred, in this case,

---

[9] Likewise, BOP Director Hawk-Sawyer is entitled to summary judgment based upon qualified immunity. In his complaint, Lee does not articulate how Hawk-Sawyer was personally involved in violating a clearly established constitutional right. See Hunter v. Bryant, 502 U.S. 224 (1991); Siegart v. Gilley, 500 U.S. 226 (1991); Anderson v. Creighton, 483 U.S. 635 (1987). The facts of this case clearly reflect that no reasonable official could find the conduct of Hawk-Sawyer to be illegal. She simply was not involved in any of the allegations raised in this complaint. As such, she is entitled to qualified immunity. Hunter, 502 U.S. 228.

11

Pennsylvania.  See 28 U.S.C. § 1346(b); See also Toole v. United States 588 F.2d 403, 406 (3d Cir. 1978).

To prevail, an FTCA plaintiff must show: (1) the existence of a duty owed to him by a defendant employee of the United States; (2) a negligent breach of said duty; and (3) proximate causation between the breach and plaintiff's injury/loss.  Mahler v. United States, 196 F.Supp. 362, 364 (W.D.Pa. 1961), aff'd, 306 F.2d 713 (3d Cir. 1962).  In cases involving federal prisoners, the courts have recognized that the government's duty of care is one of ordinary diligence.  See 18 U.S.C. § 4042; Turner v. Miller, 679 F.Supp. 441, 443 (1987).

With respect to the burden of proof and quantum of proof, the governing law is also that of the state in which the alleged tortious conduct took place.  Baum v. United States, 541 F.Supp. 1349, 1351 (M.D.Pa. 1982).  In a civil case, the plaintiff has the burden of proving his case by a fair preponderance of evidence. Id.; Vlases v. Montgomery Ward & Co., 377 F.2d 846, 851 (3d Cir. 1967).  Morgan v. Wilkinson, 606 F.Supp. 564 (M.D.Pa. 1985). Finally, Pennsylvania law defines proximate cause as causation that is a substantial factor in bringing about the injury.  See Hamil v. Bashline, 392 A.2d 1280, 1284 (Pa. 1978).

Regarding Lee's allegation that staff have provided him with a substandard mattress, there is no record that Lee ever complained that his mattress or bedding was causing his hip problem.  Indeed,

12

the record establishes that Lee's hip problems, related to his degenerative joint disease. R. 17, ¶44. Thus, the United States is entitled to summary judgment on this portion of Lee's FTCA claim.

Regarding Lee's claim that he is receiving negligent medical care, in our motion to dismiss, we have argued that the claim should be dismissed due to Lee's failure to exhaust his administrative remedies. Even if Lee had exhausted, the United States would be entitled to summary judgment. Lee has consistently received medical care consistent with the community standards. On September 18, 1995, two years before the time in which Lee alleges he did not receive appropriate medical care, Lee was diagnosed with mild diffuse degenerative arthritis of the lumbar spine. It was not until July 14, 1997, that Lee first voiced any complaints regarding left hip pain. At that time, he informed medical staff that he had a **history** of osteoarthritis.

Since then, Lee has been seen by medical staff on at least twenty seven different occasions. On thirteen of these occasions, Lee **failed** to make any complaint of left hip pain. Lee has been evaluated by an orthopedic specialist on at least three occasions. Medical staff have completed numerous tests, all of which indicated that Lee is suffering from degenerative joint disease. Medical staff have prescribed various courses of treatment, including the

13

application of heat, anti-inflammatory medication, local injections, the use of a cane, and a possible hip replacement.

Although medical staff have consistently evaluated and treated Lee concerning his degenerative joint disease, Lee has failed at times to assist in this treatment. Specifically, Lee failed to appear for treatment on two occasions, including one appointment to meet with an orthopedic specialist. Lee has also refused to use a cane and to allow medical staff to give Lee a local injection, both of which were recommended by the orthopedic specialist. Finally, Lee was advised by the orthopedic specialist on April 12, 2000, that he was a candidate for a hip replacement and that Lee should schedule an appointment with the orthopedic specialist when he was ready to discuss this option. As of November 20, 2000, Lee has not attempted to make any such appointment. Therefore, although the orthopedic specialist has indicated that Lee needs to discuss treatment options, including a hip replacement, Lee has failed to do so or to seek any other treatment.

It is clear that the defendants have not breached any duty of care owing to Lee. In fact, the defendants have consistently met or exceeded their duty and they continue to do so.

Having failed to establish a breach of duty, Lee is unable to establish that any alleged breach was the **proximate cause** of his alleged personal injury. In fact, it appears as though any injury suffered by Lee was as a direct result of his failure to use a

cane, to take a needed injection, and to schedule an appointment for a discussion of hip replacement options. Therefore, because Lee has failed to demonstrate that the defendant was negligent and breached a duty owed to him, this complaint should be dismissed.

### V. Conclusion

For the reasons stated above, summary judgment should be granted in favor of the defendants with a certification that any appeal would be deemed frivolous, lacking in probable cause, and not taken in good faith.

Respectfully submitted,

DAVID M. BARASCH
United States Attorney

*(signature)*

KATE L. MERSHIMER
Assistant U.S. Attorney
SHELLEY L. GRANT
Paralegal Specialist
217 Federal Building
228 Walnut Street
P.O. Box 11754
Harrisburg, PA 17108

Dated: December 11, 2000

```
            UNITED STATES DISTRICT COURT
            MIDDLE DISTRICT OF PENNSYLVANIA

PAUL LEE,                          :
            Plaintiff              :
                                   :
      v.                           :   Civil No.  1:CV-00-00486
                                   :   (Kane, J.)
UNITED STATES OF AMERICA, et al.   :
            Defendants             :
```

CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on December 11, 2000, she served a copy of the attached

**BRIEF IN SUPPORT OF THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

Addressee:

Paul Lee
Reg. No. 01656-087
FCI Allenwood
P.O. Box 2000
White Deer, PA 17887

_____
SHELLEY L. GRANT
Paralegal Specialist