DMB:DD:slg:2000V00797

ORIGINAL

FILED
HARRISBURG, PA
FEB 12 2001
MARY E. D'ANDREA, CLERK
Per_____ Deputy Clerk

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

PAUL LEE,                           :
       Plaintiff           :
                        :
                        :
         v.                  :    Civil No.  1:CV-00-00486
                        :    (Kane, J.)
UNITED STATES OF AMERICA, et al.  :
       Defendants          :

**BRIEF IN SUPPORT OF THE DEFENDANTS'
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

DAVID M. BARASCH
United States Attorney

KATE L. MERSHIMER
Assistant U.S. Attorney
SHELLEY L. GRANT
Paralegal Specialist
217 Federal Building
225 Walnut Street
Post Office Box 11754
Harrisburg, PA 17108

Dated: February 12, 2001

# Table of Contents

I.      Statement of the Case . . . . . . . . . . . . . . . . 1

II.     Statement of Facts . . . . . . . . . . . . . . . . . 2

III.    Questions Presented . . . . . . . . . . . . . . . 10

IV.     Argument . . . . . . . . . . . . . . . . . . . . . . .10

    A.  The Mandamus Claim Against The Federal Bureau
        of Prisons Should Be Dismissed . . . . . . . . . . . 10

    B.  The Bureau of Prisons Should Be Dismissed from
        the FTCA Claims as it is an Improper Party. . . . . . 12

    C.  Lee Has Failed to Exhaust Available Federal
        Tort Claims Act Remedies Regarding His Claim
        of Negligent Medical Care. . . . . . . . . . . . . . 12

    D.  Summary Judgment May Be Granted in Favor of
        Defendants as There Are No Genuine Issues of
        Material Fact. . . . . . . . . . . . . . . . . . . . 14

        1.  Summary Judgment Is Appropriate Because
            There are no Genuine Issues of Material
            Fact . . . . . . . . . . . . . . . . . . . . . . 14

        2.  Lee Cannot Establish A Tort Claims Act
            Claim . . . . . . . . . . . . . . . . . . . . . 15

V.      Conclusion . . . . . . . . . . . . . . . . . . . . 19

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

Arnold v. BLaST Intermediate Unit 17,
    843 F.2d 122 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Baum v. United States,
    541 F. Supp. 1349 (M.D.Pa. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Billiteri v. United Stated Board of Parole,
    541 F.2d 938 (2d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,
    403 U.S. 388 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Communication Workers v. American Telegraph & Telegraph Co.,
    932 F.2d 199 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Continental Insurance v. Bodie,
    682 F.2d 436 (3d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Davis v. Marsh,
    807 F.2d 908 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Ducharme v. Merrill-National Laboratories,
    574 F.2d 1307 (5th Cir. 1978), cert. denied, 439 U.S. 1002,  (1978)(  . . . . . . . . . . . . . . . . 13

Gillespie v. Civiletti,
    629 F.2d 637 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Grant v. Hogan,
    505 F.2d 1220 (3d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Haines v. Liggett Group Inc.,
    975 F.2d 81 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Heckler v. Ringer,
    466 U.S. 602 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Kerr  v. United States District Court,
    426 U.S. 394 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Mahler v. United States,
    196 F. Supp. 362 (W.D.Pa. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Morgan v. Wilkinson,
 606 F. Supp. 564 (M.D.Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Naporano Metal & Iron Co. v. Secretary of Labor,
 529 F.2d 537 (3d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Peterson v. Lehigh Valley District Counsel,
 676 F.2d 81 (3d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Toole v. United States,
 588 F.2d 403 (3d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Turner v. Miller,
 679 F. Supp. 441 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Muniz,
 374 U.S. 150 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Vlases v. Montgomery Ward & Co.,
 377 F.2d 846 (3d Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**STATE CASES**

Hamil v. Bashline,
 392 A.2d 1280 (Pa. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**FEDERAL STATUTES**

18 U.S.C. § 4042 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. §1346(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

28 U.S.C. § 1361 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. §2671 et seq., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §2675(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28 U.S.C. 2679(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed.R.Civ.P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**MISCELLANEOUS**

Physician's Desk Reference, 2412 (48th ed. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Physician's Desk Reference, 563 (48th ed. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Taber's Cyclopedic Medical Dictionary, 1364 (18th ed. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Taber's Cyclopedic Medical Dictionary, 280 (18th ed. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Taber's Cyclopedic Medical Dictionary, 1480 (18th ed. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## I.  Statement of the Case

On March 15, 2000, Paul Lee, an inmate formerly incarcerated at the Federal Correctional Institution Allenwood,[1] White Deer, Pennsylvania, ("FCI Allenwood") filed a combined Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671 et seq., and Bivens complaint.[2]  Defendants filed a motion to dismiss and a motion for summary judgment and supporting briefs on November 27 and December 11, 2000, respectively.  On December 14, 2000, rather than oppose the dispositive motions, Lee filed a motion to amend his complaint.  Defendants did not oppose Lee's motion.  On January 31, 2001, this Court granted Lee's motion to amend his complaint and directed the defendants to file a responsive pleading by February 2, 2001.

In his amended complaint, Lee has dropped his Bivens claim but now seeks an "order of mandamus" to compel the Bureau of Prisons to provide him with hip replacement surgery.  As to Lee's FTCA claim, he alleges: (1) that he requested and was denied the use of two mattresses, therefore causing pain in his hip; (2) that during his incarceration, he was provided "improper bedding" that has caused a steady deterioration of his left hip as well as degenerative arthritis; and, (3) that the United States has

---

[1] On December 20, 2000, Lee was transferred to the Federal Correctional Institution Elkton, Elkton, Ohio, ("FCI Elkton").

[2] Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

negligently failed to provide him with medical care and treatment for his left hip injury.

Lee filed his amended complaint against the United States of America and the Federal Bureau of Prisons. On January 29, 2001, defendants' filed a motion to dismiss and for summary judgment. This brief is filed in support of that motion. For the petition of mandamus, defendants seek to dismiss it as Lee has not exhausted other avenues of relief. For the FTCA portion of the complaint, defendants seek to dismiss the Bureau of Prisons as an improper party and to dismiss the complaint for failure to exhaust administrative remedies regarding the medical care Lee received. Otherwise, as to the FTCA portion of the complaint, the undisputed facts demonstrate that Lee was provided with appropriate medical treatment and care.

## II. **Statement of Facts**

On July 30, 1991, Lee entered into the custody of Federal Bureau of Prisons. Lee was released from custody on July 15, 1992, via good conduct time release. (See R. 11, ¶3.)[3] On February 17, 1995, Lee entered into the custody of the Bureau of Prisons arriving at FCI McKean, Pennsylvania on March 10, 1995. (R. 11, ¶4.) On March 30, 1995, Lee was transferred to FCI Cumberland, Maryland. (R. 11, ¶5.) A review of Lee's medical records reveals

---

[3] "R." refers to Defendant's Record to Brief in Support of Defendant's Motion to Dismiss and for Summary Judgment.

2

that on September 18, 1995, Lee had an x-ray of his lower back taken which indicated that Lee had mild diffuse degenerative arthritis of the lumbar spine.  (R. 11, ¶6.)

On February 5, 1996, Lee was transferred to FCI Beckley, West Virginia, arriving there on February 20, 1996.  (R. 11, ¶7.) Lee made the first complaint concerning his left hip on or about July 14, 1997.  Lee was seen by medical staff and he was prescribed Tylenol.  At that time, Lee indicated to staff that he had a history of osteoarthritis.[4]  (R. 11-12, ¶8; R. 72.)

On August 4, 1997, Lee was seen by medical staff in response to complaints that his left hip was "aching."  Lee was prescribed Motrin and told to apply heat three times a day.  An orthopedic consultation was ordered for an injection--which was to be canceled if Lee got better.  At that time, medical staff suspected that Lee was suffering from bursitis.[5]  (R. 12, ¶9; R. 72.)

On September 15, 1997, Lee was seen by medical staff for lower back pain.  It was noted that Lee had full range of motion, but his back was tender.  Lee was prescribed Motrin and heat, and

---

[4] Osteoarthritis is a type of arthritis marked by progressive cartilage deterioration in the synovial joints and vertebrae. Taber's Cyclopedic Medical Dictionary, 1364 (18th ed. 1997).

[5] Bursitis is an inflammation of the padlike sac or cavity found in the connective tissue usually in the vicinity of joints. Taber's Cyclopedic Medical Dictionary, 280 (18th ed. 1997).

he was instructed to report to sick call if needed.   (R. 12, ¶10; R. 71.)

On October 14, 1997, Lee was seen by medical staff and again a diagnosis of bursitis was made.  Lee was prescribed Motrin and was instructed to apply heat and to return to health services as needed.  (R. 12, ¶11; R. 71.)

On December 9, 1997, Lee was examined by an orthopedic specialist pursuant to the consultation ordered on August 4, 1997. During this examination, the orthopedic specialist noted that Lee had Piriformis Syndrome.[6]  The affected area was injected with Depo-Medrol[7] and Xylocaine.[8]  Lee was also prescribed Indomethacin, which is an anti-inflammatory medication.  (R. 12-13, ¶12; R. 67-68.)

Over the next seven months, Lee was examined by medical staff on February 13, May 14, and May 22, 1998, for various complaints **unrelated** to left hip pain.  (R. 13, ¶¶13, 14, 15.)  It was not until July 24, 1998, that Lee was seen by medical staff for umbilical hernia and complaints of left hip pain.  Lee was prescribed Indomethacin and a referral for steroid injection was

---

[6] Piriformis Syndrome is a condition marked by pain in the hip and buttock that radiates up into the lower back and down the leg. Taber's Cyclopedic Medical Dictionary, 1480 (18th ed. 1997).

[7] Depo-Medrol is an anti-inflammatory intramuscular injection. Physician's Desk Reference, 2412 (48th ed. 1994).

[8] Xylocaine is indicated for local or regional anesthesia. Physician's Desk Reference, 563 (48th ed. 1994).

4

made.  Medical staff noted that Lee did <u>not</u> require a lower bunk in

his quarters.   The record further indicates that Lee **failed** to

appear   for   his   scheduled   orthopedic   consultation   with   the

orthopedic specialist.  (R. 13, ¶16; R. 63, 64.)

On September 15, 1998, Lee was evaluated by medical staff

and he requested another injection.   An orthopedic consultation

with the orthopedic specialist was again scheduled and Lee was

prescribed Indomethacin.  (R. 13-14, ¶17; R. 63.)

On October 26, 1998, Lee was transferred to the Federal

Correctional Institution Allenwood ("FCI Allenwood"), White Deer,

Pennsylvania arriving there on November 16, 1998.   (R. 14, ¶18.)

During this transfer period, Lee was evaluated by medical staff for

"left hip arthritis" on November 2, 1999.  Lee requested medication

for pain and was prescribed Motrin.  (R. 14, ¶19; R. 51.)

On   November   16,   1998,   upon   Lee's   arrival   at   FCI

Allenwood, a history of left hip bursitis was noted in Lee's

medical record.  (R. 14, ¶20; R. 61.)  Lee was next seen by medical

staff six months later on April 19, 1999, for a complaint **unrelated**

to hip pain.  (R. 14, ¶21; R. 50.)

On   April   26,   1999,   Lee   reported   for   sick   call,

complaining  of  congestion,  coughing,  a  hernia,  and  left  side

bursitis.   It was again noted during this visit that Lee had a

history of left hip bursitis.   An examination of Lee's left hip

revealed a decreased range of motion of all fields, positive point

tenderness over the joint without erythema or signs of active inflammation. Lee was prescribed Motrin to be taken as needed for pain. Medical staff diagnosed Lee as suffering from left hip bursitis by history, which means that Lee has a history of bursitis but no present indication or complaints of bursitis. An x-ray of Lee's hip was ordered, and a consultation request was made for an orthopedic specialist to evaluate his hip. (R. 14-15, ¶22; R. 49.) On April 30, 1999, Lee was seen by medical staff for complaints unrelated to his left hip. (R. 15, ¶23; R. 48-49.)

On June 2, 1999, an x-ray report revealed that Lee had severe degenerative changes of the left hip joint. (R. 15, ¶24; R. 46.) On June 23, 1999, Lee **failed** to appear for a scheduled sick call appointment. (R. 15, ¶25; R. 48.) On July 6, 1999, medical staff discussed the results of the x-ray with Lee. At this time, medical staff discussed degenerative joint disease and the various treatment options. Lee was also instructed that he would be seeing an orthopedic specialist. (R. 15, ¶26; R. 48.)

On July 14, 1999, Lee was evaluated by an orthopedic specialist. The orthopedic specialist indicated to Lee that he could be a candidate for hip replacement in the future, but that at the present time he appeared to be too young for such a procedure. Lee was then offered a cane and a local injection. Lee **<u>refused</u>** both of these options. (R. 15-16, ¶27; R. 47, 56.)

6

Lee was examined by medical staff on August 13 and 18, September 2, November 29, and December 9, 1999, for a variety of complaints, none of which related to left hip pain. Lee made no further complaints to medical staff about his left hip pain until five months later on December 22, 1999. At this time, an orthopedic referral was submitted and x-rays were again ordered to be taken. (R. 16-17, ¶¶28-33.)

On January 6, 2000, a consultation request for an orthopedic specialist was written to evaluate Lee's degenerative joint disease of the left hip. (R. 17, ¶34; R. 37.) On February 4, 2000, a review of the x-ray films revealed bilateral osteoarthritis. It was noted that the left side was greater than the right. (R. 17, ¶35; R. 38.)

On February 24, 2000, Lee complained, via administrative remedy #206522-F1, that he should be provided with a second mattress. This request was evaluated by medical staff and was denied since there was no evidence of any medical need for Lee to have a second mattress. Additionally, at no time had Lee complained to medical staff that his degenerative joint disease was caused by or was being aggravated by inappropriate bedding. (R. 17, ¶36; R. 20-26.)

On April 12, 2000, Lee was seen by an orthopedic specialist who again recommended that Lee use a cane and take anti-inflammatory medication. Lee was somewhat resistant to using a

7

cane, and the orthopedic specialist explained why the cane would be beneficial.  The orthopedic specialist told Lee that when he was ready to discuss hip surgery it would be reasonable to have this discussion with him.  (R. 17-18, ¶37; R. 35, 37.)

On May 8, 2000, Lee made a request for two copies of his orthopedic consultations, which were provided to him on June 26, 2000.  (R. 18, ¶38; R. 33.)  On May 19, 2000, Lee's medications were refilled, in addition, Lee was prescribed Motrin with one refill.  It was noted that Lee had a history of degenerative joint disease.  (R. 18, ¶39.)

While Lee was incarcerated at FCI Allenwood, he participated in the Exercise Across America program.  This program consisted of the inmates walking various laps around the outside track at FCI Allenwood. One lap of the track at FCI Allenwood is equal to ½ mile. (R. 80, ¶4.)  During July 2000, Lee  participated in the Exercise Across America program on eight occasions walking 10 to 12 laps within 45 to 195 minutes during each session.  (R. 80-81, ¶¶5-12.)  In fact, a statistics sheet dated August 18, 2000, reveals that Lee  walked a total of 71 miles as of that date.  (R. 81, ¶13; R. 104.)[9]

Additionally, Lee volunteered to participate as a referee for intramural basketball and football games.  As a referee, Lee

---

[9]  In order to protect the privacy of other inmates, their names and registration numbers have been redacted from all attachments referenced in Q. Blanton's declaration.

followed the play of the game by running up and down the court and/or field for the entire length of the games, generally 40 minutes.  Q. Blanton, Supervisory Recreation Specialist, observed Lee perform as a referee during numerous inmate intramural games from July 2000 thru November 2000.  Mr. Blanton has no recollection of Lee complaining that he was having any difficulty keeping up with the play during any of the basketball or football games.  (See Blanton Declar., R. 81-84; Attachments, R. 86-113.)

On December 20, 2000, Lee was transferred from FCI Allenwood to FCI Elkton.  The record reveals that upon his arrival at FCI Elkton Lee failed to make any complaints concerning hip replacement surgery.  (R. 19, ¶44; R. 27.)

Since May 2000, Lee has been seen by medical staff on three occasions, July 11, August 22, and October 6, 2000.  (R. 18, ¶¶41-43.) Over this nine month period, Lee has made no complaints to medical staff of left hip pain.  As of January 23, 2001, Lee has not requested to see the orthopedic specialist to discuss having a hip replacement.  As a matter of fact, the medical record reveals that Lee has not complained to Health Services concerning any ailment since his arrival at FCI Elkton.  (R. 19, ¶45.)

Based upon Dr. Migliorino's review of Lee's medical records, there is no record that Lee ever complained that his hip condition was caused by inappropriate bedding.  In fact, the record

9

reveals that Lee is suffering from degenerative joint disease.  (R. 17, ¶46.)

### III.  Questions Presented

1. Should the Mandamus claim against the Federal Bureau of Prisons be dismissed?

2. Should the FTCA claims be dismissed because the Bureau of Prisons is an improper party and because Lee has failed to exhaust all available administrative remedies with respect to the medical care claims raised in this case?

3. Should defendants be granted summary judgment as Lee cannot establish a Federal Tort Claims Act claim?

Suggested answers in the affirmative.

### IV.  Argument

### A.  The Mandamus Claim Against The Federal Bureau of Prisons Should Be Dismissed.

Though the federal writ of mandamus is technically abolished, the court does have the power to compel a federal officer to perform a duty under 28 U.S.C. § 1361.  See Arnold v. BLaST Intermediate Unit 17, 843 F.2d 122, 125 (3d Cir. 1988). Statutory mandamus, like its common-law predecessor, is "intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty."  Heckler v, Ringer, 466 U.S. 602, 617 (1984).  See Naporano Metal & Iron Co. v. Secretary of Labor, 529 F.2d 537 (3d Cir. 1976); Grant v. Hogan, 505 F.2d 1220, 1225 (3d Cir. 1974).

10

The writ of mandamus, however, is a drastic remedy that a court should grant only in extraordinary circumstances. <u>See</u> <u>Kerr v. United States Dist. Court</u>, 426 U.S. 394, 402, (1976). Given its drastic nature, a writ of mandamus should not be issued until after all other avenues of relief, either administrative or judicial, have been exhausted. <u>See</u>, <u>e.g.</u>, <u>Heckler v. Ringer</u> 466 U.S. 602, 616-617 (1984); <u>Billiteri v. United Stated Board of Parole</u>, 541 F.2d 938 (2d Cir. 1976); and <u>Grant v. Hogan</u>, 505 F.2d 1220 (3d Cir. 1974). Thus, in addition to the jurisdictional prerequisite inherent in the language of section 1651(a), two additional prerequisites for issuance of a writ are: "(1) that petitioner have no other 'adequate means to attain the [desired] relief,' and (2) that petitioner meet its burden of showing that its right to the writ is 'clear and indisputable.' " <u>Haines v. Liggett Group Inc.</u>, 975 F.2d 81, 89 (3d Cir. 1992) (quoting <u>Kerr</u>, 426 U.S. at 403, and citing <u>DeMasi v. Weiss</u>, 669 F.2d 114, 117 (3d Cir. 1982)); <u>Communication Workers v. American Tel. & Tel. Co.</u>, 932 F.2d 199, 208 (3d Cir. 1991).

In this case it is clear that defendants have not violated any duty owed to Lee. The defendants have provided Lee with medical care consistent with community standards. Moreover, Lee has not exhausted his available avenues for relief. Specifically, Lee was told on April 12, 2000, that when he was ready to discuss hip surgery it would be reasonable to have this

11

discussion with the orthopedic specialist. As of January 23, 2001, Lee has not attempted to meet with the orthopedic specialist. Lee claims that BOP has refused to schedule an orthopedic consultation. Even if this is true, as Lee alleges, he can pursue a remedy through the administrative remedy process. Thus, mandamus relief does not lie and the petition must be dismissed.

**B.    The Bureau of Prisons Should Be Dismissed from the FTCA Claims as it is an Improper Party.**

In this action, Lee has named the Federal Bureau of Prisons and the United States of America as defendants. In an FTCA action, the only appropriate defendant is the United States of America. See 28 U.S.C. 2679(d)(1). Therefore, defendant BOP should be dismissed from the FTCA portion of the complaint.

**C.    Lee Has Failed to Exhaust Available Federal Tort Claims Act Remedies Regarding His Claim of Negligent Medical Care.**

The district court obtains subject matter jurisdiction for all claims brought pursuant to the Federal Tort Claims Act by virtue of 28 U.S.C. §1346(b). The filing of an administrative claim with the appropriate federal agency is a **jurisdictional prerequisite** to bringing a civil action against the United States for damages for the negligence or wrongful act of any employee of the United States. See 28 U.S.C. §2675(a); See also Gillespie v. Civiletti, 629 F.2d 637 (9th Cir. 1980); Davis v. Marsh, 807 F.2d 908 (11th Cir. 1987)(only those claims presented initially to the administrative agency are cognizable in a tort action against the

12

United States); <u>Ducharme v. Merrill-National Laboratories</u>, 574 F.2d 1307 (5th Cir. 1978), <u>cert</u>. <u>denied</u>, 439 U.S. 1002, (1978)(administrative procedure required under this section is jurisdictional and cannot be waived).

In this case, Lee has three FTCA claims: the failure to provide him with two mattresses; the failure to provide him appropriate bedding, i.e. a satisfactory mattress; and the failure to provide him with appropriate medical care. Although Lee filed an administrative tort claim with the Northeast Regional Office, Federal Bureau of Prisons, Philadelphia, Pennsylvania, for allegedly providing him with a substandard mattress, Lee has **not** filed an administrative tort claim regarding allegations that the denial of the use of two mattresses has caused him hip pain or for allegations of negligent medical care.

Specifically, Lee filed administrative tort claim number TRT-NER-2000-449 with the Northeast Regional Office on February 7, 2000. In his claim, Lee alleged that "[t]he BOP has caused my hip to deteriorated [sic] by providing me with a steel bed and substandard mattress to sleep on. without a box spring [sic] By reason of the "BOP" cause negligence [sic] in their part not to provide me with proper bedding care." (<u>See</u> R. 4 and 5.) Lee did **not** raise any allegations of negligent medical care.

On June 28, 2000, Lee's claim was denied by Regional Counsel Henry J. Sadowski, who sent Lee a final determination

13

letter dated that same date.  In this letter, Lee was informed that his claim was being denied and that if he was dissatisfied with this decision he could file suit in the appropriate United States District Court within six (6) months of the date of the memorandum. A copy of Lee's administrative tort claim and its denial are attached to the declaration of J. Fromm.  <u>See</u> R. 4, 5, 6-9.

Therefore, Lee has <u>not</u> exhausted his claims regarding the denial of the use of two mattresses or negligent medical care and these claims should be dismissed.

**D.    <u>Summary Judgment May Be Granted in Favor of Defendants as There Are No Genuine Issues of Material Fact.</u>**

**1.    Summary Judgment Is Appropriate Because There are no Genuine Issues of Material Fact.**

Pursuant to Fed.R.Civ.P. 56, summary judgment is appropriately entered when the moving party demonstrates, by affidavit or otherwise, that there are no genuine issues of any material fact to be resolved.  <u>See</u> <u>Peterson v. Lehigh Valley District Counsel</u>, 676 F.2d 81, 84 (3d Cir. 1982); <u>Continental Insurance v. Bodie</u>, 682 F.2d 436, 438 (3d Cir. 1982).

Rule 56(c) "mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The Court also stated in <u>Celotex</u> that the party moving for summary judgment need not, as a

14

matter of course, support its motion with affidavits.  The Court reasoned that "the impact of these subsections [Fed.R.Civ.P. 56 (a)-(e)] is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may and should be granted  <u>so long as whatever is before the</u> <u>district court demonstrates that the standard for the entry of</u> <u>summary judgment</u>, as set forth in Rule 56(c) <u>is satisfied</u>."  477 U.S. at 323 (emphasis added).

### 2.   Lee Cannot Establish A Tort Claims Act Claim.

Under the Federal Tort Claims Act, federal prisoners may seek redress for injuries resulting from the simple negligence of employees of the United States.  <u>See</u> <u>United States v. Muniz</u>, 374 U.S. 150, 153-154 (1963).  It is well-settled that a federal district court considering a FTCA action must apply the law of the state in which the alleged tortious conduct occurred, in this case, Pennsylvania.  <u>See</u> 28 U.S.C. § 1346(b); <u>See</u> <u>also</u> <u>Toole v. United</u> <u>States</u> 588 F.2d 403, 406 (3d Cir. 1978).

To prevail, an FTCA plaintiff must show: (1) the existence of a duty owed to him by a defendant employee of the United States; (2) a negligent breach of said duty; and (3) proximate causation between the breach and plaintiff's injury/loss. <u>See</u> <u>Mahler v. United States</u>, 196 F.Supp. 362, 364 (W.D.Pa. 1961), <u>aff'd</u>, 306 F.2d 713 (3d Cir. 1962).  In cases involving federal prisoners, the courts have recognized that the government's duty of

15

care is one of ordinary diligence. <u>See</u> 18 U.S.C. § 4042; <u>Turner v. Miller</u>, 679 F.Supp. 441, 443 (1987).

With respect to the burden of proof and quantum of proof, the governing law is also that of the state in which the alleged tortious conduct took place. <u>Baum v. United States</u>, 541 F.Supp. 1349, 1351 (M.D.Pa. 1982). In a civil case, the plaintiff has the burden of proving his case by a fair preponderance of evidence. <u>Id.</u>; <u>Vlases v. Montgomery Ward & Co.</u>, 377 F.2d 846, 851 (3d Cir. 1967). <u>Morgan v. Wilkinson</u>, 606 F.Supp. 564 (M.D.Pa. 1985). Finally, Pennsylvania law defines proximate cause as causation that is a substantial factor in bringing about the injury. <u>See Hamil v. Bashline</u>, 392 A.2d 1280, 1284 (Pa. 1978).

Regarding Lee's allegation that the denial of the use of two mattresses caused him pain, there is no evidence of any medical need for lee to have a second mattress. Additionally, at no time had Lee complained to medical staff that his degenerative joint disease was caused by or was being aggravated by inappropriate bedding. (R. 17 ¶36.) Thus, the United States is entitled to summary judgment on this portion of Lee's FTCA claim.

Regarding Lee's allegation that staff have provided him with a substandard mattress, there is no record that Lee ever complained that his mattress or bedding was causing his hip problem. Indeed, the record establishes that Lee's hip problems, related to his degenerative joint disease. (R. 17, ¶46.) Thus,

16

the United States is entitled to summary judgment on this portion of Lee's FTCA claim.

Regarding Lee's claim that he is receiving negligent medical care we have argued that the claim should be dismissed due to Lee's failure to exhaust his administrative remedies. Even if Lee had exhausted, the United States would be entitled to summary judgment. Lee has consistently received medical care consistent with the community standards. On September 18, 1995, two years before the time in which Lee alleges he did not receive appropriate medical care, Lee was diagnosed with mild diffuse degenerative arthritis of the lumbar spine. It was not until July 14, 1997, that Lee first voiced any complaints regarding left hip pain. At that time, he informed medical staff that he had a **history** of osteoarthritis.

Since then, Lee has been seen by medical staff on at least twenty seven different occasions. On thirteen of these occasions, Lee **failed** to make any complaint of left hip pain. Lee has been evaluated by an orthopedic specialist on at least three occasions. Medical staff have completed numerous tests, all of which indicated that Lee is suffering from degenerative joint disease. Medical staff have prescribed various courses of treatment, including the application of heat, anti-inflammatory medication, local injections, the use of a cane, and a possible hip replacement.

17

Although medical staff have consistently evaluated and treated Lee concerning his degenerative joint disease, Lee has failed at times to assist in this treatment. Specifically, Lee failed to appear for treatment on two occasions, including one appointment to meet with an orthopedic specialist. Lee has also refused to use a cane and to allow medical staff to give Lee a local injection, both of which were recommended by the orthopedic specialist. Finally, Lee was advised by the orthopedic specialist on April 12, 2000, that he was a candidate for a hip replacement and that Lee should schedule an appointment with the orthopedic specialist when he was ready to discuss this option. As of January 23, 2001, Lee has not attempted to make any such appointment. Therefore, although the orthopedic specialist has indicated that Lee needs to discuss treatment options, including a hip replacement, Lee has failed to do so or to seek any other treatment.

It is clear that the defendants have not breached any duty of care owing to Lee. In fact, the defendants have consistently met or exceeded their duty and they continue to do so.

Having failed to establish a breach of duty, Lee is unable to establish that any alleged breach was the **proximate cause** of his alleged personal injury. In fact, it appears as though any injury suffered by Lee was as a direct result of his failure to use a cane, to take a needed injection, and to schedule an appointment

18

for a discussion of hip replacement options.    Therefore, because
Lee has failed to demonstrate that the defendant was negligent and
breached a duty owed to him, this complaint should be dismissed.

### V.  **Conclusion**

For the reasons stated above, the petition for mandamus
must be dismissed.    The Federal Bureau of Prisons should be
dismissed from the FTCA claims as an improper party.    Finally,
Lee's FTCA claims with respect to the denial of the use of two
mattresses and the medical care he received should be dismissed for
failure to exhaust his Federal Tort Claims Act remedies.    For the
reasons stated above, summary judgment should be granted in favor
of the defendants with a certification that any appeal would be
deemed frivolous, lacking in probable cause, and not taken in good
faith.

Respectfully submitted,

DAVID M. BARASCH
United States Attorney

KATE L. MERSHIMER
Assistant U.S. Attorney
SHELLEY L. GRANT
Paralegal Specialist
217 Federal Building
228 Walnut Street
P.O. Box 11754
Harrisburg, PA 17108

Dated: February 12, 2001

19

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

PAUL LEE,                          :
                Plaintiff          :
                                   :
         v.                        :     Civil No.  1:CV-00-00486
                                   :     (Kane, J.)
UNITED STATES OF AMERICA, et al.   :
                Defendants         :

### CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on February 12, 2001, she served a copy of the attached

**BRIEF IN SUPPORT OF THE DEFENDANTS'
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

Addressee:

Paul Lee
Reg. No. 01656-087
FCI Elkton
P.O. Box 89
Elkton, Ohio 44415

SHELLEY L. GRANT
Paralegal Specialist