DMB:KLM:all:2000V00797

ORIGINAL

FILED
HARRISBURG, PA
FEB 12 2001
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

PAUL LEE,
    Plaintiff

v.      Civil No. 1:CV-00-00486
    (Kane, J.)

UNITED STATES OF AMERICA, et al.
    Defendants

### STATEMENT OF MATERIAL FACTS

1.  Paul Lee, an inmate formerly incarcerated at the Federal Correctional Institution Allenwood, White Deer, Pennsylvania,[1] filed this amended Federal Tort Claims Act complaint and petition for mandamus.

2.  The defendants are the United States of America and the Federal Bureau of Prisons.

3.  On July 30, 1991, Lee entered into the custody of Federal Bureau of Prisons. Lee was released from custody on July 15, 1992, via good conduct time release. (See R. 11, ¶3.)[2]

4.  On February 17, 1995, Lee again entered into the custody of the Bureau of Prisons arriving at the Federal

---

[1] On December 20, 2000, Lee was transferred to the Federal Correctional Institution Elkton, Elkton, Ohio ("FCI Elkton").

[2] "R." refers to Defendant's Record to Brief in Support of Defendant's Motion to Dismiss and for Summary Judgment.

Correctional Institution at McKean, Pennsylvania on March 10, 1995. (R. 11, ¶4.)  On March 30, 1995, Lee was transferred to the Federal Correctional Institution at Cumberland, Maryland. (R. 11, ¶5.)

    5.    On September 18, 1995, an x-ray of Lee's lower back was taken which indicated that Lee had mild diffuse degenerative arthritis of the lumbar spine.  (R. 11, ¶6.)

    6.    On February 5, 1996, Lee was transferred to the Federal Correctional Institution at Beckley, West Virginia.  He arrived there on February 20, 1996.  (R. 11, ¶7.)

    7.    On or about July 14, 1997, Lee made his first complaint concerning his left hip.  He was seen by medical staff, and Tylenol was prescribed.  Lee indicated to staff at that time that he had a history of osteoarthritis.[3]  (R. 11-12, ¶8; R. 72.)

    8.    On August 4, 1997, Lee was seen by medical staff in response to complaints that his left hip was "aching."  Lee was prescribed Motrin and told to apply heat three times a day.  An orthopedic consultation was ordered for an injection which was to be canceled if Lee got better.  At that time, medical staff suspected that Lee was suffering from bursitis.[4]  (R. 12, ¶9; R. 72.)

---

[3] A type of arthritis marked by progressive cartilage deterioration in the synovial joints and vertebrae. <u>Taber's Cyclopedic Medical Dictionary</u>, 1364 (18th ed. 1997).

[4] Inflammation of the padlike sac or cavity found in the connective tissue usually in the vicinity of joints. <u>Taber's Cyclopedic Medical Dictionary</u>, 280 (18th ed. 1997).

9. On September 15, 1997, Lee was seen by medical staff for lower back pain. It was noted that Lee had full range of motion, but his back was tender. Lee was prescribed Motrin and heat, and he was instructed to report to sick call if needed. (R. 12, ¶10; R. 71.)

10. On October 14, 1997, Lee was seen by medical staff and again a diagnosis of bursitis was made. Lee was prescribed Motrin and was instructed to apply heat and to return to health services as needed. (R. 12, ¶11; R. 71.)

11. On December 9, 1997, Lee was examined by an orthopedic specialist pursuant to the consultation ordered on August 4, 1997. During this examination, the orthopedic specialist noted that Lee had Piriformis Syndrome.[5] The affected area was injected with Depo-Medrol[6] and Xylocaine.[7] Lee was also prescribed Indomethacin, which is an anti-inflammatory medication. (R. 12-13, ¶12; R. 67-68.)

12. On February 13, 1998, Lee reported for sick call complaining of a callous on his right foot. Lee did not complain of any left hip pain during that visit. (R. 13, ¶13; R. 71.)

---

[5] A condition marked by pain in the hip and buttock that radiates up into the lower back and down the leg. Taber's Cyclopedic Medical Dictionary, 1480 (18th ed. 1997).

[6] Depo-Medrol is an anti-inflammatory intramuscular injection. Physician's Desk Reference, 2412 (48th ed. 1994).

[7] Xylocaine is indicated for local or regional anesthesia. Physician's Desk Reference, 563 (48th ed. 1994).

13. On May 14, 1998, Lee reported for sick call complaining of pain in his left elbow. Once again, Lee did not complain of any left hip pain. (R. 13, ¶14; R. 65.)

14. On May 22, 1998, Lee reported for sick call complaining of a cold. Once again, Lee did not complain of any left hip pain. (R. 13, ¶15; R. 65.)

15. On July 24, 1998, Lee was seen by medical staff for umbilical hernia and complaints of left hip pain. Lee was prescribed Indomethacin and a referral for steroid injection was made. It was noted by medical staff that Lee did <u>not</u> require a lower bunk in his quarters. The record further indicates that Lee failed to appear for his scheduled orthopedic consultation with the orthopedic specialist. (R. 13, ¶16; R. 63, 64.)

16. On September 15, 1998, Lee was evaluated by medical staff, and he requested another injection. An orthopedic consultation was again scheduled and Indomethacin was prescribed for Lee. (R. 13-14, ¶17; R. 63)

17. On October 26, 1998, Lee was transferred to the Federal Correctional Institution Allenwood ("FCI Allenwood"), White Deer, Pennsylvania arriving on November 16, 1998. (R. 14, ¶18.)

18. On November 2, 1998, Lee was evaluated by medical staff for "left hip arthritis." Lee requested medication for pain and was prescribed Motrin. (R. 14, ¶19; R. 51.)

4

19. On November 16, 1998, upon Lee's arrival at FCI Allenwood, a history of left hip bursitis was noted in his medical record. (R. 14, ¶20; R. 61.)

20. On April 19, 1999, following a complaint regarding pigmentation of the skin under his eyes, Lee was seen by medical staff. Lee did not make any complaints of hip pain. (R. 14, ¶21; R. 50.)

21. On April 26, 1999, Lee reported for sick call, complaining of congestion, coughing, a hernia and left side bursitis. It was noted during this visit that Lee had a history of left hip bursitis. An examination of Lee's left hip revealed a decreased range of motion of all fields, positive point tenderness over the joint without erythema or signs of active inflammation. Lee was prescribed Motrin to be taken as needed for pain. Medical staff diagnosed Lee as suffering from left hip bursitis by history, which means that Lee has a history of bursitis but no present indication or complaints of bursitis. An x-ray of Lee's hip was ordered, and a consultation request was made for an orthopedic specialist to evaluate his hip. (R. 14-15, ¶22; R. 49.)

22. On April 30, 1999, Lee was seen by medical staff when he complained that the cold medication he was taking was not working. Once again, Lee failed to make any complaints regarding his left hip. (R. 15, ¶23; R. 48-49.)

23. On June 2, 1999, an x-ray report revealed severe degenerative changes of Lee's left hip joint. (R. 15, ¶24; R. 46.)

24. On June 23, 1999, Lee failed to appear for a scheduled sick call appointment. (R. 15, ¶25; R. 48.)

25. On July 6, 1999, medical staff discussed the results of the x-ray with Lee. At this time, medical staff discussed degenerative joint disease and the various treatment options. Lee was also told that he would be seeing an orthopedic specialist. (R. 15, ¶26; R. 48.)

26. On July 14, 1999, Lee was evaluated by an orthopedic specialist. The orthopedic specialist indicated to Lee that he could be a candidate for hip replacement in the future, but that at the present time he appeared to be too young for such a procedure. Lee was then offered a cane and a local injection. Lee refused both of these options. (R. 15-16, ¶27; R. 47, 56.)

27. On August 13, 1999, Lee was seen by medical staff for an injury. Lee failed to make any complaints of left hip pain. (R. 16, ¶28; R. 54, 47.)

28. On August 18, 1999, Lee reported to sick call and requested a prostate exam. Lee failed to make any complaints of left hip pain. (R. 16, ¶29; R. 47.)

29. On September 2, 1999, Lee was given a physical examination. Lee failed to make any complaints of left hip pain. (R. 16, ¶30; R. 42-43.)

6

30. On November 29, 1999, Lee was seen by medical staff after complaining of a lump on his foot (callous). He was diagnosed by medical staff as having foot fungus. Lee failed to make any complaints of left hip pain. (R. 16, ¶31.)

31. On December 9, 1999, Lee reported to sick call complaining of an injury. Once again, he failed to make any complaints of left hip pain. (R. 16, ¶32; R. 41.)

32. On December 22, 1999, Lee requested to see the doctor regarding his left hip. An orthopedic referral was submitted, and x-rays were again ordered to be taken. (R. 17, ¶33; R. 40.)

33. On January 6, 2000, a consultation request for an orthopedic specialist was written to evaluate Lee's severe degenerative joint disease of the left hip. (R. 17, ¶34; R. 37.)

34. On February 4, 2000, a review of the x-ray films revealed bilateral osteoarthritis. It was noted that the left side was greater than the right. (R. 17, ¶35; R. 38.)

35. On February 24, 2000, Lee complained, via administrative remedy #206522-F1, that he should be provided with a second mattress. This request was evaluated by medical staff and was denied since there was no evidence of any medical need for Lee to have a second mattress. Additionally, at no time had Lee complained to medical staff that his degenerative joint disease was

caused by or was being aggravated by inappropriate bedding. (R. 17, ¶36; 20-26.)

36. On April 12, 2000, Lee was seen by an orthopedic specialist who recommended that Lee use a cane and take anti-inflammatory medication. Lee was somewhat resistant to using a cane, and the orthopedic specialist explained why the cane would be beneficial. The Orthopedic specialist told Lee that when he was ready to discuss hip surgery, it would be reasonable to have this discussion with him. (R. 17-18, ¶37; R. 35, 37.)

37. On May 8, 2000, Lee requested two copies of his orthopedic consultations. (R. 18, ¶38; R. 33.)

38. On May 19, 2000, Lee's medications were refilled. It was noted that he has a history of degenerative joint disease. Lee was prescribed Motrin with one refill. (R. 18, ¶39; R. 33.)

39. On June 26, 2000, a copy of Lee's orthopedic consultation was provided to him, per his May 8, 2000, request. (R. 18, ¶40; R. 33.)

40. On July 11, 2000, Lee was treated for a complaint of dry skin. Lee failed to make any complaints of left hip pain. (R. 18, ¶41; R. 32.)

41. While Lee was incarcerated at FCI Allenwood, he participated in the Exercise Across America program. This program consisted of the inmates walking various laps around the outside track at FCI Allenwood. One lap of the track at FCI Allenwood is

equal to ½ mile. (R. 80, ¶4.) Lee participated in the Execise Across America on July 13, 16, 20, 21, 22, 23, 24 and 25, 2000, walking 45 to 95 minutes during each session. (R. 80-81, ¶¶ 5-12.) A statistics sheet dated August 18, 2000, reveals that Lee walked a total of 71 miles as of that date. (R. 81, ¶13; R. 104.)

42. Additionally, Lee volunteered to participate as a referee for intramural basketball and football games. As a referee, Lee followed the play of the game by running up and down the court and/or field for the entire length of the games, generally 40 minutes. Q. Blanton, Supervisory Recreation Specialist, observed Lee perform as a referee during numerous inmate intramural games from July 2000 thru November 2000. Mr. Blanton has no recollection of Lee complaining that he was having any difficulty keeping up with the play during any of the basketball or football games. (See Blanton Declar., R. 81-84; Attachments, R. 86-113.)

43. On August 22, 2000, Lee was given a physical examination as a pre-requisite to working in food service. The examination was essentially normal with no medical complaints noted at that time. Lee failed to make any complaints of left hip pain. (R. 18, ¶42; R. 29-30.)

44. On October 6, 2000, Lee reported to sick call, complaining of sinus congestion. He failed to make any complaints of left hip pain. (R. 18, ¶43; R. 28.)

9

45. On December 20, 2000, Lee was transferred from FCI Allenwood to FCI Elkton. The record reveals that upon his arrival at FCI Elkton Lee failed to make any complaints concerning hip replacement surgery. (R. 19, ¶44; R. 27.)

46. As of January 23, 2001, Lee has not requested to see the orthopedic specialist to discuss having a hip replacement. As a matter of fact, the medical record reveals that Lee has not complained to Health Services concerning any ailment since his arrival at FCI Elkton. (R. 19, ¶45.)

47. Based upon Dr. Migliorino's review of Lee's medical records, there is no record that Lee ever complained that his hip condition was caused by inappropriate bedding. The record reveals that Lee is suffering from degenerative joint disease. (R. 19, ¶46.)

Respectfully submitted,

DAVID M. BARASCH
United States Attorney

KATE L. MERSHIMER
Assistant U.S. Attorney
SHELLEY GRANT
Paralegal Specialist
217 Federal Building
228 Walnut Street
Post Office Box 11754
Harrisburg, PA 17108

Dated: February 12, 2001

10

```
            UNITED STATES DISTRICT COURT
          MIDDLE DISTRICT OF PENNSYLVANIA
```

PAUL LEE,                            :
        Plaintiff          :
                           :
        v.                 :     Civil No. 1:CV-00-00486
                           :     (Kane, J.)
UNITED STATES OF AMERICA, et al.     :
        Defendants         :

### CERTIFICATE OF SERVICE BY MAIL

    The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

    That on February 12, 2001, she served a copy of the attached

**STATEMENT OF MATERIAL FACTS**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

Addressee:

Paul Lee
Reg. No. 01656-087
FCI Elkton
P.O. Box 89
Elkton, Ohio 44415

*Shelley L. Grant*
_____
SHELLEY L. GRANT
Paralegal Specialist