IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL LEE, | ) | |
| | ) | |
| Plaintiff, | ) | **FILED** |
| | ) | **SCRANTON** |
| v. | ) 1:00cv0486 | |
| | ) Judge Kane | APR – 9 2001 |
| UNITED STATES, et al, | ) | |
| | ) | PER _____ |
| Defendant. | ) | **DEPUTY CLERK** |

PLAINTIFF PAUL LEE'S MEMORANDUM AND EVIDENCE
IN OPPOSITION TO THE MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

AND NOW COMES the Plaintiff, Paul Lee ("Lee"), and files this, his Memorandum and

Evidence in Opposition to the Motion to Dismiss or for Summary Judgment:

I. Background

Lee refers this Court to his well-pleaded allegations as contained in the Amended

Complaint for the background to this case. Lee specifically, as shown by the attached supporting

declaration, denies the statement of the facts and case submitted by the government.

II. Discussion

a. The Government Failed to Show that the Mandamus Claim Should be
Dismissed Against the Federal Bureau of Prisons

The government asserts that the mandamus claims should be dismissed against the Federal

Bureau of Prisons. To support their argument, they simply claim that Lee received medical care

consistent with community standards. However, the well-pleaded facts in the Amended

Complaint show that the Federal Bureau of Prisons may be depriving Lee of medically necessary

hip replacement surgery. To this extent, the mandamus remedy is quite appropriate in place of a

1

civil rights action that would require a deliberate indifference standard.  If this Court finds any

merit to Lee's claims, then it would be inappropriate to dismiss the mandamus claims.

As to the claim that Lee needs to exhaust administrative remedies, Lee already

demonstrated to the Court that he did so.  Furthermore, Lee has repeatedly appeared at "sick call"

in an effort to discuss his hip and the problems that were occurring.  However, the medical staff

refused to document Lee's concerns.  Often, they would tell him to buy pain killers at the prison

commissary.   This would be done without making any reference in Lee's medical records.  See

Lee Declaration, attached.

Based on the above, it is imperative that this Court allow the action in mandamus to

proceed so that Lee is not irreparably harmed by the Federal Bureau of Prisons' failure to provide

him the necessary surgery.  To dismiss the claims would result in a travesty of justice where Lee

may need intervention by this Court to obtain the medical treatment that is necessary for him to

function normally and to be free of the severe pain he is suffering.

### b.  The Federal Bureau of Prisons was not Sued Under the Tort Claims Act

The government asserts that the Federal Bureau of Prisons is an improper party to the tort

claims in this action.  However, Lee properly named the United States of America as the

defendant in his tort claim, not the Federal Bureau of Prisons.  To the extent that there is some

confusion, Lee dismissed the Federal Bureau of Prisons, but not the United States, from any tort

claim action contained herein pursuant to F.R.Cv.P. 41(a).

### c.  Lee Exhausted his Administrative Remedies Regarding the Medical Care

As shown by the Lee Declaration, tort claims were filed with respect to the medical care

claims.  Therefore, this claim is without merit.

2

**d. <u>There are material facts in dispute precluding summary judgment</u>**

The government asserts that there are no material issues of fact in dispute because there is no evidence of a medical need for a second mattress. However, as shown by the Lee Declaration, there are material facts in dispute regarding this issue. Specifically, medical staff appeared to pay no heed to Lee's admonishments that when he had a second mattress, he did not suffer from the extreme pain. The medical staff simply ignored Lee. As a result, Lee suffered from extreme physical pain, often unable to move normally the next day. However, on each occasion when he had a second mattress, he did not suffer from the adverse consequences. Notably, the mattresses provided by the Federal Bureau of Prisons are extremely thin. In a deliberate attempt to harm the inmates, the FBOP has deliberately reduced the thickness of the mattresses provided.

Similarly, the government asserts that Lee did not complain to medical staff about the improper bedding. On the contrary, as previously shown to this Court, Lee exhausted all of his administrative remedies. Furthermore, Lee repeatedly admonished medical staff pertaining to the need for a second mattress. The medical staff, however, did not note Lee's concerns in the medical records. Rather, staff simply "brushed off" Lee's requests. <u>See</u> Lee Declaration. As such, there are material issues in dispute as to whether Lee requested a mattress and advised staff of the pain as a result of sleeping on the Federal Bureau of Prisons' super thin torture mattresses. Certainly, Lee should have had some accommodation for his degenerative hip problems which are so severe that he appears to need a hip replacement.

Next, the government claims that Lee failed to appear for various treatments and appointments. This is simply not true. First, as to the missed appointments, prisoners must rely on a "call out" sheet posted by prison staff. This sheet often is not delivered on time to the units, or is stolen or torn down by inmates. Lee has appeared for appointments each and every time a

call out sheet was posted by prison staff.  Lee has never deliberately missed an appointment.  <u>See</u>

Lee Declaration.  As to the claim that Lee did not attempt to make appointments regarding hip

replacement surgery, this is also not true.  Each time Lee appeared for sick call, he mentioned the

hip pain and requested the surgery.  Medical staff, however, told Lee to buy some pain killers

from the commissary.  They did not note the complaints in the medical records.  Even after this

suit was filed, the Federal Bureau of Prisons has still not arranged for the hip replacement

surgery.

Importantly, Lee notes that the government's claims that Lee refused to receive "a local

injection."  On the contrary, Lee did receive one injection.  He noted complications and irritation

as a proximate result, and advised medical staff accordingly.  Medical staff told him that, based

on his reactions, he should not accept further injections.  The refusal to accept further injections

was based on the complications and was not a "refusal" to cooperate with medical treatment.  <u>See</u>

Lee Declaration.

Based on this, there are clearly material facts in dispute.  As such, the government is not

entitled to summary judgment based on this record.  Therefore, the claims must proceed to trial.

### III.  <u>Conclusion</u>

On this record, there are clearly material facts in dispute which prevent any award of

summary judgment to the government.  As such, this case should proceed to trial.

Respectfully submitted,

By: _____

Paul Lee
% Chrissy's News and Paralegal Service
500 Lincoln Highway
N. Versailles, PA  15137

PLAINTIFF

## DECLARATION OF PAUL LEE

I, Paul Lee, declare and state under the penalty for perjury that the following is true and correct to the best of my knowledge (28 USC 1746):

1. My name is Paul Lee. I am the Plaintiff in this action. I have knowledge of the facts of this case.

2. On page 12 of the Government's brief, they claim that I did not request to meet with the orthopedic specialist. This is not true. I repeatedly appeared at "sick call" because of my hip and other problems. When I mentioned it, the medical staff glanced at the record and would tell me, "your hip problem is already documented," "there are pain killers for sale at the prison commissary," "we gave you pain killers," etc. Many times, staff did not note my complaints in the log. When I requested surgery, the medical staff would tell me that only the Regional Director can approve surgery. I discussed the pain to my hip each and every time I appeared for sick call appointments. I, however, had no power to enter it in their logs. The medical staff must do that. I have asked them on several occasions why they did not enter anything about it and they would tell me, "it's already documented," or, "we only write down one problem per sick call appointment and the hip problem is already listed in the file."

3. The government asks this Court to dismiss the Federal Bureau of Prisons from the tort claim action. I think my action is clear that the United States of America is the defendant of the tort claims. However, to the extent that there is any confusion, in accordance with F.R.Cv.P. 41(a), I dismiss the Federal Bureau of Prisons from the tort claims, but not the United States.

4. As to the claim that I did not file a tort claim relating to my injuries, I note that I filed several tort claims. All of the claims were denied or ignored. I have filed tort claims relating to the beds, mattresses, and the failure to properly treat my hip. There were several tort claims submitted.

5. The government claims that there is no evidence that the bedding aggravated my condition and they assert that I did not advise medical staff about the bedding problem. This is not true. I repeatedly advised the staff that, on the rare occasions that another mattress is available to me (when there is not another inmate assigned to my cell and there are two mattresses), the pain is drastically decreased and I am able to sleep. Furthermore, I am not as sore the next day and have less difficulty walking and moving. When I tell them this, they say, "We don't issue mattresses," or, "You just want two mattresses," or, "The doctor won't allow me to give you one." I have even submitted written requests and administrative remedies requesting a mattress. Each request has been ignored or denied. I cannot make the staff enter my requests into the medical log. Rather, it is typical that the physician's assistants simply enter their subjective, or only one part of the story. This is because of the large number of inmates who appear for sick call each day and the Federal Bureau of Prisons failure to adequately staff their institutions. Each "consultation" with medical staff lasts only a few moments in what the Federal Bureau of Prisons calls "managed care."

6. When I have a second mattress, I am able to sleep. Recently, the Federal Bureau of Prisons reduced the thickness of their mattresses. The mattresses I received are very thin and aggravate the pain in my hip. As I stated, when I have a double mattress, the pain is significantly reduced. When I do not have a second mattress, I am unable to sleep because the pain is devastating. The next day, I have more trouble walking and moving than when I have a double mattress.

7. The government's claim that I did not complain of hip pain until mid-1997 is false. I routinely raised this issue at sick call. Furthermore, even if the issue was raised in 1997 for the first time, it has since been four years and I still have not had the necessary surgery.

8. On almost every one of the twenty-seven documented occasions that I appeared at sick call, I raised issues about the pain. However, staff simply brushed off my complaints. They would tell me that they can only log one issue at a time, that they already were aware of my problem, that I should buy pain killers at the prison commissary, that I should take pain killers, that only the Regional Director could approve surgery, etc.

9. By the government's own admission on page 17 of their brief, they prescribed a possible hip replacement. That was years ago and it still has not been done.

10. Contrary to the claims of the government, I have repeatedly asked medical staff to take whatever steps necessary to provide a hip replacement. Staff would advise me that it was not their decision and that the Regional Director must approve the procedure. Medical staff told me that the orthopedic consultant did not have the ability to require such surgery and that a review committee decides. I told staff to take whatever action necessary for me to receive the surgery and they advised that it is well documented in my file. Thus, the claim that I never asked for a consultation is not true.

11. The claim that I "failed" to appear for appointments is not true. I check the "call out" sheet every day that it is posted. Many times, due to computer problems, the "call out" is not printed in time, or is not posted. Other times, because staff only post one sheet, some inmates will steal the sheet so that they do not forget an appointment. Other times, appointments will not appear on the call out due to data entry errors. These conditions are outside of my control. I have no other way to be informed of a "call out" except through that sheet.

12. As to the "local injection," I did accept one injection. I suffered complications from it as it made the pain worse. I spoke with several medical staff members and they advised that it probably would be best not to take it again because of the severity of the reaction. Based on this advice, I declined to take another shot. Medical staff never advised me that I should take it or that the complications would not occur again. Medical staff certainly did not advise me that an injection was "needed." On the contrary, they told me I should decline based on the complications and prior results.

13. As to use of a cane, I have used a cane. I found that it did not help matters. The orthopedic consultant told me that a cane was unnecessary since it did not help.

14. The government has had plenty of time to arrange hip surgery. Even with this suit pending, it still has not been done. Therefore, my lawsuit should not be dismissed.

This 2d day of April, 2001.

By: _____
Paul Lee

## CERTIFICATE OF SERVICE

I, Paul Lee, certify that I caused a true copy of the foregoing to be mailed to Kate L.

Mershimer, Esquire; Office of U.S. Attorney; Box 11754; Harrisburg, PA  17108 on this 6th day

of April, 2001.


By: _____

     Paul Lee