See Attachment

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

PAUL LEE,                            :
          Plaintiff                  :
                                     :
     v.                              :         CIVIL NO. 1:CV-00-0486
                                     :
                                     :         (Judge Kane)
UNITED STATES OF AMERICA, et al., :
          Defendants                 :

**FILED**
HARRISBURG, PA

AUG 31 2001

MARY E. D'ANDREA, CLERK
Per _____
          Deputy Clerk

**ORDER**

**Background**

     Paul Lee, an inmate formerly confined at the Allenwood Federal

Correctional Institution, White Deer, Pennsylvania[1], originally filed

this action as a combined Federal Tort Claims Act ("FTCA"), 28 U.S.C.

§ 2671, et seq., and a Bivens complaint.[2]  On November 27, 2000,

defendants filed a motion to dismiss and a motion for summary

judgment.   On December 14, 2000, rather than file a brief in

opposition to the defendants' motion, the plaintiff filed a motion to

amend his complaint.  Defendants did not oppose the motion to amend.

-------------------------

1.  Plaintiff is currently confined in the Federal Correctional
Institution, Elkton, Ohio. ("FCI-Elkton").

2.  Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,
403 U.S. 388 (1971). Bivens stands for the proposition that "a
citizen suffering a compensable injury to a constitutionally
protected interest could invoke the general federal question
jurisdiction of the district court to obtain an award of monetary
damages against the responsible federal official." Butz v.
Economou, 438 U.S. 478, 504 (1978).

Certified from the record
Date 8/31/01
Mary E. D'Andrea, Clerk
Per _____
          Deputy Clerk

By Order dated January 31, 2001, Lee's motion to amend his complaint was granted and the defendants were directed to file a responsive pleading by February 2, 2001.

Lee files his amended complaint against the United States of America and the Federal Bureau of Prisons[3] ("BOP"). In his amended complaint, he no longer seeks to pursue his <u>Bivens</u> claim, but now seeks an order of mandamus to compel the Bureau of Prisons to provide him with hip replacement surgery. With respect to his FTCA claim, he alleges: (1) that he requested and was denied the use of two mattresses, thereby causing pain in his hip; (2) that during his incarceration, he was provided "improper bedding" that has caused a steady deterioration of his left hip as well as degenerative arthritis; and (3) that the United States has negligently failed to provide him with medical care and treatment for his left hip injury. (Doc. No. 41).

Presently pending before the court is the defendants' motion to dismiss and/or for summary judgment. (Doc. No. 31). This motion has been fully briefed and is ripe for disposition. For the reasons discussed below, the motion will be granted.

<u>Discussion</u>

---

3. In an FTCA action, the only appropriate defendant is the United States of America. <u>See</u> 28 U.S.C. § 2679(d)(1). Thus, the BOP will be dismissed from the FTCA portion of Lee's complaint.

Summary judgment is appropriate when supporting materials, such as affidavits and other documentation, show there are no material issues of fact to be resolved, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The Supreme Court has ruled that Fed. R. Civ. 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp v. Catrett, 477 U.S. 317 (1986).  The court further stated that "Rule 56 (e). . .requires the non-moving party to go beyond the pleadings and by [his] own affidavits, or by the `depositions, answers to interrogatories, and admissions on file,' designate `specific facts showing that there is a genuine issue for trial.'"  Id. at 324.  The Supreme Court in Anderson v. Liberty Lobby, 477 U.S. 242 (1986), has held that the opposing party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings.  See Celotex, 477 U.S. at 325.  Further, an opposing party cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit.  Liberty Lobby, 477 U.S. at 256-57.

With the above principles in mind, the court will address the

3

allegations in the complaint, the materials and documentation submitted by defendants to pierce these allegations, and the response submitted by plaintiff in an attempt to controvert defendants' materials and to demonstrate that there exists a triable issue of material fact.

The plaintiff alleges that in 1995 the BOP made a decision to replace the existing beds with "hard metal steel beds" and to replace the mattresses with "thin sub-standard mattresses". (Doc. No. 1, complaint). Lee states that these mattresses "made it practically impossible to obtain proper rest and inmates would wake up and their arms and legs would be numb". The "steel beds coupled with the substandard mattresses caused [Lee's] hip to steadily deteriorate". The plaintiff alleges that he has "continuously advised the BOP that the hard metal beds and small mattresses have caused severe pain in his hip". He claims to have filed a formal request for a double mattress, but it was denied. Id.

Lee claims that he is in need of hip replacement surgery "because he has been diagnosed as having severe degenerative arthritis of the left hip" as a result of sleeping on a "sub-standard bed and mattress". He states that "since 1997, [he] has constantly and consistently made staff aware of his serious medical needs, however, the agents of the United States took a deliberate indifference and

4

breached their duty of due care by not providing proper medical treatment and by not heeding the advice of their own qualified consultants[4]."  He claims that in February, 2000, Dr. Magill noted that "when he wants to talk about a hip replacement I think it would be reasonable to have this discussion with him and perhaps even have Dr. Hahn give him a surgical talk."  Lee states that he "has been and is ready to have hip replacement surgery, however, the BOP is dragging its feet and making excuses despite Lee's complaints".  Id.

Thus, Lee filed the instant action in which he seeks "a writ of mandamus requiring the defendants to perform the necessary medical treatment as recommended by objective professionals", as well as judgment against the United States for negligence in providing him with a "sub-s`tandard bed and mattress" which led to the steady deterioration of his hip.  Id.

To pierce these allegations, the defendants have submitted a statement of material facts, (Doc. No. 39) supported by extensive documentation and affidavits, (Doc. No. 38), which indicate that on July 30, 1991, Lee entered into the custody of the Federal Bureau of Prisons.  He was released from custody on July 15, 1992, via good conduct time release.  On February 17, 1995, Lee again entered into the custody of the Federal Bureau of Prisons, arriving at the Federal

---

4.  Lee claims that in August, 1999, a Dr. Magill, diagnosed him as a candidate for a hip replacement.

5

Correctional Institution at McKean, Pennsylvania on March 10, 1995.
On March 30, 1995, he was transferred to the Federal Correctional
Institution at Cumberland, Maryland.

On September 18, 1995, while housed at FCI-Cumberland, an x-ray
of Lee's lower back was taken which indicated that Lee had mild
diffuse degenerative arthritis of the lumbar spine.

On February 5, 1996, Lee was transferred to the Federal
Correctional Institution at Beckley, West Virginia. He arrived there
on February 10, 1996. While housed at FCI-Beckley, the plaintiff was
examined and treated on the following dates:

    -On July 14, 1997, Lee made his first complaint concerning his
    left hip. He was seen by medical staff, and Tylenol was
    prescribed. He indicated to the staff at that time that he had
    a history of osteoarthritis.[5]

    -On August 4, 1997, Lee was seen by medical staff in response to
    complaints that his left hip was "aching". He was prescribed
    Motrin and told to apply heat three times a day. An orthopedic
    consultation was ordered for an injection which was to be
    canceled if Lee got better. At that time, the medical staff
    suspected that Lee was suffering from bursitis.[6]

    -On September 15, 1997, Lee was seen by medical staff for lower
    back pain. It was noted that he had full range of motion, but
    his back was tender. Lee was prescribed Motrin and heat, and he
    was instructed to report to sick call if needed.

---

5. A type of arthritis marked by progressive cartilage
deterioration in the synovial joints and vertebrae. Taber's
Cyclopedic Medical Dictionary, 1364 (18th ed. 1997).

6. Inflammation of the padlike sac or cavity found in the
connective tissue usually in the vicinity of the joints. Taber's
Cycolpedic Medical Dictionary, 280 (18th ed. 1997).

-On October 14, 1997, Lee was seen by medical staff and again a diagnosis of bursitis was made.  He was prescribed Motrin and was instructed to apply heat and to return to health services as needed.

-On December 9, 1997, Lee was examined by an orthopedic specialist pursuant to the consultation ordered on August 4, 1997. During this examination, the orthopedic specialist noted that Lee had Piriformis Syndrome.[7]  The affected area was injected with Depo-Medrol[8] and Xylocaine.[9]  Lee was also prescribed Indomethacin, which is an anti-inflammatory medication.

-On February 13, 1998, Lee reported for sick call complaining of a callous in his right foot.  Lee did not complain of any left hip pain during that visit.

-On May 14, 1998, Lee reported for sick call complaining of pain in his left elbow.  Once again, he did not complain of any left hip pain.

-On May 22, 1998, Lee reported for sick call complaining of a cold.  Once again, Lee did not complain of any left hip pain.

-On July 24, 1998, Lee was seen by medical staff for an umbilical hernia and complaints of left hip pain.  He was prescribed Indomethacin and a referral for steroid injection was made.  It was noted by medical staff that Lee did not require a lower bunk in his quarters.  The record further indicates that Lee failed to appear for his scheduled orthopedic consultation with the orthopedic specialist.

-On September 15, 1998, Lee was evaluated by medical staff, and he requested another injection.  An orthopedic consultation was

---

7.  A condition marked by pain in the hip and buttock that radiates up into the lower back and down the leg.  Taber's Cyclopedic Medical Dictionary, 1480 (18th ed. 1997).

8.  Depo-Medrol is an anti-inflammatory intramuscular injection. Physician's Desk Reference, 2412 (48th ed. 1994).

9.  Xylocaine is indicated for local or regional anesthesia. Physician's Desk Reference, 563 (48th ed. 1994).

again scheduled and Indomethacin was prescribed.
(Doc. No. 38, Affidavit of R. Migliorino, D.O., Clinical Director at FCI-Allenwood, and copy of Lee's medical records from 7/97 through 9/98).

On October 26, 1998, Lee was transferred to the Allenwood Federal Correctional Institution, ("FCI-Allenwood"), White Deer, Pennsylvania. On November 2, 1998, while in transit, Lee was evaluated by medical staff at the Federal Transfer Center, Oklahoma City, Oklahoma, for "left hip arthritis". He requested medication for pain and was prescribed Motrin. On November 16, 1998, Lee arrived at FCI-Allenwood. Upon his arrival, a history of left hip bursitis was noted in his medical record.

While housed at FCI-Allenwood, Lee was examined and treated on the following dates:

-On April 19, 1999, following a complaint regarding pigmentation of the skin under his eyes, Lee was seen by medical staff. He did not complain of any hip pain.

-On April 26, 1999, Lee reported for sick call, complaining of congestion, coughing, a hernia and left side bursitis. It was noted during this visit that Lee had a history of left hip bursitis. An examination of Lee's left hip revealed a decreased range of motion of all fields, positive point tenderness over the joint without erythema or signs of active inflammation. He was prescribed Motrin to be taken as needed for pain. Medical staff diagnosed Lee as suffering from left hip bursitis by history, which means that Lee has a history of bursitis but no present indication of bursitis. An x-ray of Lee's hip was ordered, and a consultation request was made for an orthopedic specialist to evaluate his hip.

8

-On April 30, 1999, Lee was seen by medical staff when he complained that the cold medication he was taking was not working.   Once again, Lee failed to make any complaints regarding his left hip.

-On June 2, 1999, an x-ray report revealed severe degenerative changes of Lee's left hip joint.

-On June 23, 1999, Lee failed to appear for a scheduled sick call appointment.

-On July 6, 1999, medical staff discussed the results of the x-ray with Lee.   At this time, medical staff discussed degenerative joint disease and the various treatment options. Lee was also told that he would be seeing an orthopedic specialist.

-On July 14, 1999, Lee was evaluated by an orthopedic specialist.  The orthopedic specialist indicated to Lee that he could be a candidate for hip replacement in the future, but that at the present time he appeared to be too young for such a procedure.  Lee was then offered a cane and a local injection. Lee refused both options.

-On August 13, 1999, Lee was seen by medical staff for an injury.  He failed to make any complaints of left hip pain.

-On August 18, 1999, Lee reported to sick call and requested a prostate exam.  He failed to make any complaints of left hip pain.

-On September 2, 1999, Lee was given a physical examination.  He failed to make any complaints of left hip pain.

-On November 29, 1999, Lee was seen by medical staff after complaining of a lump on his foot (callous). He was diagnosed by medical staff as having foot fungus.  He failed to make any complaints of left hip pain.

-On December 9, 1999, Lee reported to sick call complaining of an injury.  Once again, he failed to make any complaints of left hip pain.

-On December 22, 1999, Lee requested to see the doctor regarding

9

his left hip. An orthopedic referral was submitted, and x-rays were again ordered to be taken.

-On January 6, 2000, a consultation report for an orthopedic specialist was written to evaluate Lee's severe degenerative joint disease of the left hip.

-On February 4, 2000, a review of the x-ray films revealed bilateral osteoarthritis. It was noted that the left side was greater than the right.

-On February 24, 2000, Lee complained, via administrative remedy #206522-F1, that he should be provided with a second mattress. This request was evaluated by medical staff and was denied since there was no evidence of any medical need for Lee to have a second mattress. Additionally, at no time had Lee complained to medical staff that his degenerative joint disease was caused by or was being aggravated by inappropriate bedding.

-On April 12, 2000, Lee was seen by Dr. John T. Magill, an orthopedic specialist, who recommended that Lee use a cane and take anti-inflammatory medication. Lee was somewhat resistant to using a cane, and Dr. Magill explained why the cane would be beneficial. Dr. Magill told Lee that when he was ready to discuss his surgery, it would be reasonable to have this discussion with him and perhaps have Dr. Hahn give him a surgical talk.

-On May 8, 2000, Lee requested two copies of his orthopedic consultations.

-On May 19, 2000, Lee's medications were refilled. It was noted that he has a history of degenerative joint disease. Lee was prescribed Motrin with one refill.

-On June 26, 2000, a copy of Lee's orthopedic consultation was provided to him, per his May 8, 2000 request.

-On July 11, 2000, Lee was treated for a complaint of dry skin. Lee failed to make any complaints of left hip pain.

-On August 22, 2000, Lee was given a physical examination as a pre-requisite to working in food service. The examination was essentially normal with no medical complaints noted at that

time.  Lee failed to make any complaints of left hip pain.

-On October 6, 2000, Lee reported to sick call, complaining of sinus congestion.  He failed to make any complaints of left hip pain.

(Doc. No. 38, Affidavit of R. Migliorino, D.O., Clinical Director at FCI-Allenwood, and copy of Lee's medical records from 4/99 through 10/00).

While incarcerated at FCI-Allenwood, Lee participated in the Exercise Across America program[10] on July 13, 16, 20, 21, 22, 23, 24 and 25, 2000.  A statistics sheet dated August 18, 2000 revealed that Lee walked a total of 71 miles as of that date.  (Doc. No. 38, Affidavit of Q. Blanton, Supervisor of Recreation at FCI-Allenwood, and copy of statistics sheet).

Additionally, Lee volunteered to participate as a referee for intramural basketball and football games.  As a referee, Lee followed the play of the game by running up and down the court and/or field for the entire length of the games, generally 40 minutes.  Q. Blanton, Supervisory Recreation Specialist, observed Lee perform as a referee during numerous inmate intramural games from July 2000 through November 2000. Mr. Blanton has no recollection of Lee complaining that he was having any difficulty keeping up with the play during any of

---

10.  This program consists of inmates walking various laps around the outside track at FCI-Allenwood.  One lap of the track is equal to ½ mile.

11

the basketball or football games. (Doc. No. 38, Blanton Affidavit).

On December 20, 2000, Lee was transferred from FCI-Allenwood to FCI-Elkton.  Upon his arrival at FCI-Elkton, Lee did not make any complaints concerning his replacement surgery.  As of January 23, 2000, Lee has not requested to see the orthopedic specialist to discuss having a hip replacement.  Moreover, his medical record reveals that Lee has not complained to Health Services concerning any ailment since his arrival at FCI-Elkton.

In an attempt to counter the affidavits and materials submitted by defendants, the plaintiff has submitted a brief in opposition to the defendants' motion for summary judgment, as well as his own affidavit. (Doc. No. 46).  These documents, however, contain nothing more than a mere restatement of the claims already alleged in the plaintiff's original complaint.  In fact, plaintiff, himself states that "the well-pleaded facts in the amended complaint show that the Federal Bureau of Prisons may be depriving [him] of medically necessary hip replacement surgery". (Doc. No. 46, Lee's brief in opposition, p. 1).

In an attempt to create a material issue of fact, Lee submits his own affidavit in which he states that "on almost every one of the twenty-seven documented occasions that [he] appeared at sick call, [he] raised issues about the pain, however, staff simply brushed off

12

[his] complaints". He states he has never missed any doctor appointments or refused to cooperate in receiving an injection. (Doc. No. 46, Lee Affidavit, ¶¶8, 11-13). Plaintiff submits nothing to support such conclusory allegations. In any event, this "affidavit" does not create any dispute as to a material fact, such as whether or not defendants negligently caused plaintiff's hip condition by supplying inadequate bedding or inadequate medical treatment.

Rule 56(c) requires that the party who bears the burden of proof make a sufficient showing to establish the existence of an element essential to that party's case. Rule 56(e) specifies the type of evidentiary materials which must be submitted. Thus, even had defendants submitted no evidentiary matters, the burden would still be on the plaintiff to sustain his burden. Celotex v. Catrett, 477 U.S. 317 (1986). What plaintiff has done is submit a so called "affidavit", unsupported by any evidentiary materials, which amounts to a mere elaboration of the allegations in his complaint, and this he cannot do. See Applegate v. Top Associates, Inc., 425 F.2d 92 (2nd Cir. 1970). (A mere elaboration of conclusory pleadings is insufficient). As the court in Quiroga v. Hasbro, Inc., 934 F.2d 497 (3d Cir. 1991) stated, a party opposing summary judgment may not rest upon mere allegations, general denials, or vague statements that conduct occurred. The evidence submitted must show more than some

13

metaphysical doubt as to the material facts.  <u>Id</u>. at 500.

Moreover, the plaintiff has submitted no expert medical opinion to controvert the defendants' expert medical opinion.  When expert opinion is offered in support of a motion for summary judgment, the opposing party must supply opposing expert opinion to create a triable issue of fact.  <u>Gaus v. Mundy</u>, 762 F.2d 338 (3d Cir. 1985). Rather, plaintiff relies on his own unsupported lay-person speculation, which he cannot do.  <u>Boriq v. Kozakiewicz</u>,833 F.3d 468, 473 (3d Cir. 1987)(plaintiff failed to meet burden of proof by failing to offer expert testimony that his injury was "serious").

On the other hand, the defendants have submitted affidavits and materials in support of their motion which have not been controverted by the plaintiff.  Thus, the material facts set forth by the defendants may be accepted as true.  <u>Shulz v. Celotex</u>, 942 F.2d 204 (3d Cir. 1991); <u>Anchorage Associates v. V.I. Bd. of Tax Review</u>, 922 F.2d 168, 175 (3d Cir. 1990); <u>Gaus v. Mundy</u>, 762 F.2d 338 (3d Cir. 1985).  A determination must next be made as to whether defendants, on those undisputed facts, are entitled to judgment as a matter of law.

The FTCA provides a remedy in damages for the simple negligence of employees of the United States to protect federal inmates.  <u>United States v. Muniz</u>, 374 U.S. 150, 150 (1963).  In order to make out a

14

prima facie case of negligence Plaintiff must show: 1) defendants owed a duty to him[11]; 2) defendants' breached that duty; 3) damages were incurred by him; and 4) defendants' breach proximately caused plaintiff's injury. See Yosuf v. United States, 642 F. Supp 415, 427 (M.D. Pa. 1986); Mahler v. United States, 196 F. Supp. 362, 364 (W.D. Pa. 1961), aff'd, 306 F.2d 713 (3d Cir.), cert. denied, 371 U.S. 923 (1962).

It is well-settled that a federal district court in considering a FTCA action must apply the law of the state, in this case Pennsylvania, in which the alleged tortious conduct occurred. 28 U.S.C. § 1346(b) (1996); Toole v. United States, 588 F.2d 403, 406 (3d Cir. 1978); O'Neal v. Department of Army, 852 F. Supp. 327, 334-35 (M.D. Pa. 1994); Turner v. Miller, 679 F. Supp. 441, 443 (M.D. Pa. 1987). However, in cases such as this which involve federal prisoners, it has been recognized that the government's duty of care is one of ordinary diligence. See 18 U.S.C. § 4042; Turner, 679 F. Supp. at 443. The applicable law with respect to the burden and quantum of proof under the FTCA remains that of the state in which the

---

11. Congress has established a statutory duty of care to be applied when federal prisoners sue the United States for monetary damages. See 18 U.S.C. § 4042. Pursuant to 28 U.S.C. § 4042, the United States may only be held liable to a federal inmate if it fails to "provide suitable quarters and provide for safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2).

15

alleged tortious conduct occurred. <u>Hossic v. United States</u>, 682 F. Supp. 23, 25 (M.D. Pa. 1987).

Under Pennsylvania law, a plaintiff is required to show that the defendant's negligence was the proximate cause of his injury by a preponderance of the evidence. <u>Baum v. United States</u>, 541 F. Supp. 1349, 1351 (M.D. Pa. 1982). Furthermore, Pennsylvania law defines proximate cause as causation which was a substantial factor in bringing about the injury. <u>Hamil v. Bashline</u>, 392 A.2d 1280, 1284 (Pa. 1978).

In the instant action, it is Lee's burden to show that staff were negligent in treating his ailment. Plaintiff, however, has failed to submit any evidence that he was improperly diagnosed, that the medical staff ignored his complaints, or that they in any way failed to provide proper medical treatment. As is revealed by the defendants' submissions, Lee was seen at least twenty-seven (27) times by Health Services staff. On thirteen of these occasions, he failed to make any complaint of left hip pain. However, each time he complained of pain, he was promptly treated. Lee has been evaluated by an orthopedic specialist on at least three (3) occasions. Medical staff have completed numerous tests, all of which indicated that Lee is suffering from degenerative joint disease. Medical staff have prescribed various courses of treatment, including the application of heat, anti-

16

inflammatory medication, local injections, the use of a cane and a possible hip replacement. Finally, Lee was advised by the orthopedic specialist on April 12, 2000, that he was a candidate for a hip replacement and that Lee should schedule an appointment with the orthopedic specialist when he was ready to discuss this option. There is no indication that Lee has attempted to make such appointment. Thus, Lee has failed to state a prima facie case for negligence in that he has failed to establish that defendants have breached a duty of care owed to him, or that any alleged breach was the proximate cause of his alleged personal injury. In fact, the record reveals that the defendants have consistently met or exceeded their duty of care. Thus, defendants' are entitled to summary judgment.

With respect to Lee's allegation that the denial of the use of two mattresses caused him pain, the record reflect no evidence of any medical need for Lee to have a second mattress. Likewise, with respect to Lee's allegations that staff have provided him with a substandard mattress, there is no evidence that plaintiff's condition resulted form his mattress or bedding. Nor does Lee submit any medical expert testimony establishing that his hip problem was a result of inadequate bedding or not being supplied with two mattresses. Lee's medical record, however, establishes that Lee's hip problems stem from his degenerative joint disease. Thus, Lee has

17

failed to meet the elements of his tort claim regarding inadequate bedding and/or a need for a second mattress. Accordingly, the United States is entitled to summary judgment on the remainder of plaintiff's FTCA claim.

Finally, with respect to the plaintiff's request that the Court issue a mandamus, compelling the BOP to provide him with his replacement surgery, though the federal writ of mandamus is technically abolished, the court does have the power to compel a federal officer to perform a duty under 28 U.S.C. § 1361.[12] Arnold v. BLaST Intermediate Unit 17, 843 F.2d 122, 125 n.4 (3d Cir. 1988). Statutory mandamus, like its common-law predecessor, is "intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616 (1984). See also Grant v. Hogan, 505 F.2d 1220, 1225 (3d Cir. 1974).

A remedy of mandamus is a drastic measure "to be invoked only in extraordinary situations." Stehney v. Perry, 101 F.3d 925, 934 (3d Cir. 1996) (quoting Allied Chem. Corp v. Daiflon, Inc., 449 U.S. 33, 34 (1980)). The Supreme Court added that a mandamus petitioner has

---

12.   Title 28 U.S.C. § 1361 provides as follows:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

18

the burden of establishing a clear and indisputable right to relief. <u>Allied</u>, 449 U.S. at 35. <u>See also</u> <u>Kerr v. United States Dist. Court</u>, 426 U.S. 394, 401 (1976). In <u>Kerr</u>, the Court similarly noted that in order to receive mandamus relief, the party seeking it must "have no other adequate means to obtain the relief he desires." <u>Id.</u>

To the extent that the defendants owe plaintiff a duty to provide suitable medical care, the record before the court establishes that the defendants have provided plaintiff with care consistent with community standards. Moreover, plaintiff has the relief he requests available to him in that on April 12, 2000, he was told that when he was ready to discuss his surgery, it would be reasonable to have this discussion with the orthopedic specialist. The record reflects, however, that plaintiff has not attempted to schedule an appointment with the orthopedic specialist. Plaintiff argues in his opposing brief that he did attempt to schedule an appointment. Specifically, he states that "each time [he] appeared for sick call, he mentioned the hip pain and requested surgery, however, medical staff told [him] to buy some pain killers from the commissary" and that "they did not note the complaints in his medical records", thereby refusing to schedule and orthopedic consultation . (Doc. No. 46, p. 4). Even accepting these allegations as true, Lee has a remedy available to him through the administrative remedy process. Thus, mandamus dos not

19

lie.

To the extent that Lee argues that he has "exhausted his remedies as to all aspects of this complaint", (Doc. No. 52, Lee affidavit), the record reflects that the only administrative remedy filed by plaintiff regarding his medical care[13] was Administrative Remedy No. 192485-A1. (Doc. No. 9, copy of Appeal Response). In his appeal to the Central Office, plaintiff alleged that the medical care and treatment he was receiving for his pain was not appropriate and that he disagreed with the need to carry a cane to alleviate his pain. By Appeal Response dated January 6, 2000, plaintiff's Central Office Administrative Remedy was denied. Id. In finding that the Health Services Staff had provided plaintiff with medical care and treatment in accordance with Bureau policy, the Administrator noted that the Clinical Director had determined that plaintiff was not a candidate for a hip replacement. Id. It was not until April 12, 2000 that plaintiff was diagnosed as a candidate for hip surgery. (Doc. No. 38, copy of orthopedic consultation report). Thus, to the extent that plaintiff argues that the defendants have denied him the recommended

---

13. Lee also attempts to argue in his affidavit that he discussed his hip replacement in Administrative Remedy No. 206522-F1, filed on February 24, 2000. A review of that remedy and its appeals reveals that plaintiff's only complaint was that the BOP was providing him with a "substandard mattress" and he requested that he be provided with a "double mattress". Lee makes no reference to being denied hip replacement surgery. (See Doc. No. 38, copy of Administrative Remedy and Appeals).

surgery, such denial could not have taken place until after the April 12, 2000 determination.  To that end, there is no evidence of record establishing that since that date any administrative remedies have been pursued with respect to the plaintiff's claim that he has been denied a needed surgery.  Thus, Lee's petition for writ of mandamus will be denied.

AND NOW, THEREFORE, THIS   31 st   DAY OF AUGUST, 2001, IT IS HEREBY ORDERED THAT:

1.  The defendants' motion for summary judgment (Doc. No. 31) is granted.  Judgment is hereby entered in favor of the defendants and against the plaintiff.

2.  The defendants' motion for a ten day enlargement of time within which to file their reply brief in support of their motion to dismiss and/or for summary judgment, (Doc. No. 53) is dismissed as moot as their reply brief was filed and is considered timely filed by the Court.

3.  The defendants' motion to strike the plaintiff's brief in opposition to defendants' motion to dismiss and/or for summary judgment, for plaintiff's failure to sign the brief as required by Fed.R.Civ.P. 11, (Doc. No. 48), is denied, in that, although plaintiff's copy to the defendants did not contain a signature, the original copy filed with the

21

court contains plaintiff's signature.

4.    The Clerk of Court is directed to close this case.

5.    Any appeal from this order will be deemed frivolous,

not taken in good faith and lacking probable cause.

_____
YVETTE KANE
United States District Judge

YK:dlb

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

* * MAILING CERTIFICATE OF CLERK * *

August 31, 2001

Re:  1:00-cv-00486    Lee v. United States of Ame

True and correct copies of the attached were mailed by the clerk
to the following:

        Paul Lee
        FCI-Elkton
        01656-087, Unit C
        P.O. Box 89
        8730 Scrogges Road
        Elkton, OH  44415

        Kate L. Mershimer, Esq.
        U.S. Attorneys Office
        Room 217, Federal Bldg.
        228 Walnut St.
        Harrisburg, Pa  17108

cc:
Judge                      ( ✓ )        ( ✓ ) Pro Se Law Clerk
Magistrate Judge           ( )          ( ) INS
U.S. Marshal               ( )          ( ) Jury Clerk
Probation                  ( )
U.S. Attorney              ( )
Atty. for Deft.            ( )
Defendant                  ( )
Warden                     ( )
Bureau of Prisons          ( )
Ct Reporter                ( )
Ctroom Deputy              ( )
Orig-Security              ( ✓ )
Federal Public Defender    ( )
Summons Issued             ( )   with N/C attached to complt. and served by:
                                 U.S. Marshal ( )    Pltf's Attorney ( )

Standard Order 93-5        ( )
Order to Show Cause        ( )   with Petition attached & mailed certified mail
                                 to:  US Atty Gen   ( )  PA Atty Gen ( )
                                      DA of County  ( )  Respondents ( )

Bankruptcy Court           ( )
Other_____  ( )

                                          MARY E. D'ANDREA, Clerk

        8-31-01